## STATE v. WILLIAM HILTON.

(Filed 11 November, 1909.)

### 1. Judgment Suspended—Reasonable Period—Power of Court.

The power of a court having jurisdiction of a cause to suspend judgment temporarily on conviction of a criminal for some special purpose or for some determinate and reasonable period of time was recognized at common law and ordinarily obtains at the present day in courts of general jurisdiction and holding terms at stated periods.

### 2. Same—Consent of Defendant Implied.

The power of the courts to suspend judgment in criminal cases should only be upheld when sanctioned by usage, and where the consent of the defendant was expressly given or would be implied from the fact that the order was made in defendant's presence without his objection, and that its evident purpose was to save defendant from a more grievous penalty permitted or required by law. Revisal, secs. 1293, 1294. The history and reason for the power of the court to suspend judgment, and its present application, discussed by HOKE, J.

### 3. Judgment Suspended—Terms—Compliance—Discharge—Subsequent Sentence—Power of Court.

When it appears that defendant had pleaded guilty to the offense charged in the indictment and the judgment was suspended upon his payment of costs and his giving bond to appear at court from term to term to show good behavior, sentence may not be imposed after an indefinite suspension of judgment, when every condition attached to the order has been complied with, the fine and costs paid, the defendant discharged by order of court and the cause removed from the docket.

### 4. Same—Discontinuance.

In this case it appeared that defendant was charged with unlawfully selling spirituous liquor without a license under three separate indictments and pleaded guilty as to each. He was sentenced under one to pay a fine and costs; in the second, judgment was suspended upon payment of costs; in the third, prayer for judgment was continued and he was required to appear from term to term to show good behavior. The defendant, having complied with the orders made in each case, was eventually discharged by the order of court, and the causes went off the docket. *Held*, this, in substance, if not technically, amounted to a disconuance, without power of the court to subsequently impose the sentence appealed from; and a judgment imposing such sentence, being without warrant of law, is void, and will be arrested and the prisoner discharged.

APPEAL from a sentence imposed by *Long, J.,* June Criminal Term, 1909, of GUILFORD County, in a cause where there had been a plea of guilty entered by defendant, at December Term, 1907, said cause having gone off docket at _____ Term, 1908, and restored by order of his Honor at said June Term, 1909, for the purpose of imposing sentence.

The court adjudged that defendant be imprisoned in the common jail of Guilford County for a period of six months and assigned to work on the roads of Guilford County during the time, and defendant excepted and appealed.

The pertinent facts are set forth in a case on appeal, tendered in apt time by defendant's counsel and agreed to by the solicitor, as follows:

"This is a case which was heard at the December Term, 1907. The record, minute docket No. 15, page 227, in the clerk's office of Guilford County, is as follows, viz.:

"STATE *v.* WILLIAM HILTON—December Term, 1907.

"No. 128. Indictment, retailing. Defendant comes into court and pleads guilty of retailing, as charged in· the bill of indictment. Upon motion of the solicitor, the prayer for judgment is continued, upon the payment of the costs of this action, defendant to give bond of $100 for appearance at court, from term to term, and show good behavior.

"STATE *v.* WILLIAM HILTON—December Term, 1907.

"No. 109. Indictment, retailing. Defendant comes into court and pleads guilty of retailing, as charged in the bill of indictment. Upon motion of the solicitor, the judgment of the court is suspended, upon the payment of the costs of this action.

"STATE *v.* WILLIAM·HILTON—December Term, 1907.

"No. 129. Indictment, retailing. Defendant comes into court and pleads guilty of retailing, as charged in the bill of indictment. Motion of the solicitor for judgment. It is adjudged by the court that the defendant pay a fine of $25 and the costs of this action."

The defendant gave the bond of $100, as required in No. 128, above, and made his appearance at court, from term to term, and showed his good behavior, and was discharged by the court at _____ Term, 1908, and the case went off the docket. At the June Term, 1909, there were two indictments pending against defendant for retailing, the docket numbers being 24 and 123. The bill of indictment No. 24 was found at September Term, 1908, and the indictment No. 123 was found at June Term, 1909. The defendant was called for trial in No. 24 and answered. The case was heard. The jury returned a verdict of "not guilty." During the trial, and upon cross-examination of the defendant by the solicitor, it developed that the defendant had been charged with retailing at December Term, 1907. As soon as his Honor had charged the jury in No. 24, the case that was then being heard, and·before they returned their verdict, he ordered the

clerk to examine the records for the purpose of ascertaining whether or not the records showed that there was any suspended judgments against this defendant. The clerk found the record of December Term, 1907, above set out, and so informed his Honor; whereupon, his Honor, without any motion by the solicitor, ordered the defendant into custody and ordered the clerk to place upon the docket at once the two cases of December Term, 1907, viz., 128 and 109, being 147 and 148 after being placed on the docket of June Term, 1909, by his Honor's order. After this was done, the jury, in No. 24, returned and announced their verdict of "not guilty." The solicitor called No. 123 and announced his readiness for trial. The defendant answered and announced his readiness for trial. His Honor, of his own motion, sentenced the defendant to imprisonment for six months, to be assigned to work on the public roads of Guilford, in No. 147, which was case No. 128 of December Term, 1907, brought forward only a few minutes before by the clerk, upon order of his Honor.

The defendant, through his counsel, at the time his Honor pronounced this sentence, asked for the privilege of showing to his Honor under what circumstances the plea was entered at December Term, 1907. The attorneys for the defendant stated to his Honor that at that time it was impossible to hear the case of the defendant on bond, because of the number of jail cases; that the defendant was under bond; that the defendant had been present in court for several days, with a number of witnesses, and to return to another term of court, with his witnesses, would cause such loss of time and money that, as a matter of economy, he entered his plea of guilty, upon the agreement of the then solicitor, who was familiar with all the facts, and, with the approval of the trial judge, that upon entering the plea of guilty a fine should be imposed in one case and judgment suspended in the other two, upon payment of costs. The defendant asked the privilege of showing the character of the witnesses upon whose testimony the bills were found, and of showing all the facts and circumstances that caused the trial judge at December Term, 1907, to enter the judgments as found, and all the facts and circumstances that appealed to the judge hearing the cases at December Term, 1907, all of which his Honor refused to hear or consider. The defendant then insisted that he be tried in case No. 123, the case sent to the present term of the court by the municipal court, on appeal, and in which the solicitor had announced his readiness to try, the defendant contending and

151—44

insisting before his Honor that he was innocent and that he confidently expected a verdict of acquittal in the case, if the jury would be permitted to hear the testimony. His Honor would not try the case, but continued the same, of his own motion, and ordered the clerk to place a *capias* in the hands of the sheriff for service as soon as the defendant had served his sentence in No. 147 (old number), at December Term, 1907, No. 128. The defendant gave notice of appeal from the judgment rendered; whereupon, his Honor sent for a stenographer and had the following entries made, viz.:

"STATE OF NORTH CAROLINA—Guilford County.
"In the Superior Court, June Term, 1909.

### "STATE *v.* WILLIAM HILTON.

"No. 147. This is a case which was tried at the December Term, 1907, wherein the defendant pleaded guilty to the charge of retailing spirits without license. Prayer for judgment was continued in that case. The case went off the docket. At this term of court an indictment was pending against the defendant in No. 24 for retailing, the indictment having been found at some previous term in No. 24. A jury trial was had, and the jury returned a verdict of 'not guilty.'

"The defendant also stands indicted on the docket at this term in case No. 123, which appears to the court to be a case brought here by an appeal by the defendant from the recorder's court, where recently he was convicted for retailing before the recorder and sentenced to six months' imprisonment and on the roads, and required to give bond in the sum of $250 for his appearance to this term, pending his appeal. Upon motion of the solicitor, this case, No. 123, at this term, is continued. In the meantime the court ordered the clerk to bring forward on the docket Nos. 147 and 148. No. 148 was a case wherein the defendant pleaded guilty to retailing at a former term of the court, and prayer for judgment was continued. When Nos. 147 and 148, from the old docket, were brought forward, upon consideration of all of the facts which have appeared to the court, upon the records of this court and former courts, as to indictments for retailing, against the defendant, the court enters a judgment against the defendant in No. 147 as follows:

"It is considered and adjudged by the court, upon the prayer for judgment, formerly entered in this case, that the defendant be imprisoned in the county jail of Guilford for a period of six

months, and he is assigned to work on the public roads of Guilford.

"The defendant excepts and appeals to the Supreme Court. Notice of appeal waived. Appeal bond in the sum of $25 adjudged sufficient. Appearance bond in this case in the sum of $200, pending the appeal, adjudged sufficient.

"The defendant asked for time in which to make out his case on appeal, and his Honor refused to extend the time.

> MOREHEAD & SAPP and
> WM. P. BYNUM, JR.,
>     *Attorneys for Defendant."*

"Service of the foregoing case on appeal is hereby accepted, and the case is agreed to.

"This June 23, 1909.                 JONES FULLER,
                         *Solicitor of the Ninth District."*

*Attorney-General* for the State.
*W. P. Bynum* and *Morehead & Sapp* for defendant.

HOKE, J., after stating the case: The power of a court having jurisdiction of a cause to suspend judgment temporarily, on conviction of a criminal, for some special purpose or for some determinate and reasonable period of time, was recognized at common law, and ordinarily obtains at the present day in courts of general jurisdiction and holding terms at stated periods. *State v. Bennett,* 20 N. C., 43-51; *State v. Crook,* 115 N. C., 760; *Commonwealth v. Maloney,* 145 Mass., 205; *State v. Addy,* 43 N. J. Law, 113; 4th Blackstone, 394; Chitty's Cr. Law, 75.

Wherever the power was exercised, however, in a former time, except for the purpose of allowing defendant to move for a new trial or take some other steps in the orderly procedure of the case, it seems only to have been done with a view to ameliorate the condition of the defendant, as by giving him time to show that he was entitled to the benefit of clergy, or that the rigors of the sentence had been modified by act of Parliament, or by affording him opportunity to apply for pardon. Thus, in the citation from Blackstone, *supra,* the author says: "A reprieve (1) (from *reprendre,* to take back) is the withdrawing of a sentence for an interval of time, whereby the execution is suspended. This may be, first, *ex arbitrio judicis,* (2) either before or after judgment, as where the judge is not satisfied with the verdict, or the evidence is suspicious, or the indictment is insufficient, or he is doubtful whether the offense be within clergy, or, sometimes, if

it 'be a small felony, or any favorable circumstance appear in the criminal's character, in order to give room to apply to the crown for either an absolute or conditional pardon."

And Chitty lays down the same doctrine; in language nearly identical, thus: "But the more usual course is for a discretionary reprieve to proceed from the judge himself, who, from his acquaintance with all the circumstances of the trial, is most capable of judging when it is proper. The power of granting this respite belongs, of common right, to every tribunal which is invested with authority to award execution (d). And this power exists even in case of high treason, though the judge should be very prudent in its exercise (e). But it is commonly granted. where the defendant pleads a pardon which, though defective in point of form, sufficiently manifests the intention of the crown to remit the sentence (f); where it seems doubtful whether the offense is not included in some general act of grace (g); or whether it amounts to so high a crime as that charged in the indictment (h). The judge sometimes also allows it before judgment, or, at least, intimates his intention to do so, as when he is not satisfied with the verdict and entertains doubts as to the prisoner's guilt; or when a doubt arises, if the crime be not within clergy; or when, from some favorable circumstance, he intends to recommend the prisoner to mercy."

And in the more recent applications of the principle the better-considered decisions are to the effect that the power indicated should only be upheld when sanctioned by usage, and where the consent of the defendant was expressly given or would be implied from the fact that its evident purpose was to save defendant from a more grievous penalty permitted or required by the law. *Commonwealth v. John Dondican's Bail,* 115 Mass., 136. In this State, as shown in *Crook's case, supra,* the power to suspend judgment and later impose sentence has been somewhat extended in its scope, so as to allow a suspension of judgment on payment of costs, or other reasonable condition, or continuing the prayer for judgment from term to term to afford defendant opportunity to pay the cost or to make some compensation to the party injured, to be considered in the final sentence, or requiring him to appear from term to term, and for a reasonable period of time, and offer testimony to show good faith in some promise of reformation or continued obedience to the law. These latter instances of this method of procedure seem to be innovations upon the exercise of the power to suspend judgment as it exisited at common law; and while they are well established with us by usage, the practice should not be readily or hastily enlarged and

extended to occasions which might result in unusual punishment or unusual methods of administering the criminal law. That this is a correct interpretation of *State v. Crook, supra,* is not only shown in the opinion itself, delivered by *Associate Justice Avery,* but in a subsequent opinion (*State v. Griffis,* 117 N. C., 709) the same learned Justice thus speaks of that decision: "We have had occasion, in *State v. Crook,* 115 N. C., 763, to comment upon the fact that the practice adopted in the courts of this State of suspending judgments upon the payment of costs is a peculiar one, for which we have searched in vain for precedents elsewhere. Indeed, it has proved difficult to find adjudications in other courts furnishing any analogies which would aid us in reaching a conclusion as to the force and effect of such orders. It appears, however, that a practice somewhat similar had prevailed for many years in the courts of Massachusetts before it received the legislative sanction by enactment into a statute. *Commonwealth v. Dondican,* 115 Mass., 136. But that court and those of Florida and Mississippi (*Gibson v. State,* 68 Miss., 241; *Ex parte Williams,* 25 Fla., 310), where the Massachusetts idea seems to have been transplanted, though they may differ as to the manner or details of the proceeding, concur in holding that the sentence of the court, whether upon a finding or a confession of guilt, can be suspended only with the consent of the defendant. But as the postponement of punishment, with the possibility that it may never be inflicted, is deemed a favor to him, it is presumed by the court that he assents to such an order, when made in his presence and without objection on his part. *State v. Crook, supra,* at p. 766; *Gibson v. State, supra.* Where, under the practice prevailing in Massachusetts, the order was made that the judgment lie on file, it was entered, with the consent of both the defendant and the Commonwealth's attorney, and left either at liberty to have the case reinstated on the docket and to demand that the court proceed to judgment."

And the statutes of this State (Revisal, secs. 1293, 1294) seem to give legislative sanction to the position indicated. It will thus be seen that while the power to suspend judgment is allowed with us, there are well-recognized restrictions upon its exercise, and no well-considered decision, here or elsewhere, will uphold the principle that sentence may be pronounced after an indefinite suspension of judgment, when every condition attached to it has been complied with, the fine and costs paid, the defendant discharged, by order of court, and the cause removed from the docket. To allow a defendant, under such circumstances, to be imprisoned by the court would afford opportunity for a capri-

cious exercise of arbitrary power unknown to the common law and disapproved and condemned by many well-considered decisions of the present time. *People v. Barrett,* 202 Ill., 287; *Neal v. State,* 104 Ga., 509; *People v. Allen,* 155 Ill., 601; *United States v. Wilson,* 46 Fed., 748; *People v. Blackburn,* 6 Utah, 347.

In the case before us, while the evidence offered by defendant was not admitted, a perusal of the record gives clear indication of the essential facts attending the plea of guilty on the part of defendant and the subsequent proceedings in the cause. At December Term, 1907, there were three indictments for retailing pending against defendant, and a plea of guilty was entered in each. In one case the defendant was sentenced to pay a fine of $25 and the costs. In the second case the judgment was suspended upon the payment of the costs; and in the third case the prayer for judgment was continued and the defendant required to give bond in the sum of $100 for appearance in court from term to term to show good behavior. The fine and all the costs were paid by the defendant, he appeared from court to court, and, having showed good behavior, was discharged, by order of court, at _____ Term, 1908, and the causes went off the docket. This, if not technically so, amounted, in substance, to a discontinuance of the cause (*Kistler v. State,* 64 Ind., 371; *State v. Meager,* 57 Vt., 398; *Drinkard v. State,* 20 Ala., 1; Bishop's Cr. Procedure, sec. 1393; *State v. Respass,* 85 N. C., 534), and the court was thereafter without power to further molest the defendant on this charge.

We are of opinion that, on the facts presented, the judgment was without warrant of law, and void, and that the same must be arrested and the prisoner discharged.

Reversed.