## STATE v. NASBY HARDIN.

(Filed 2 June, 1922.)

**1. Judgments, Suspended—Sentence—Criminal Law—Inquiry—Courts—Jurisdiction.**

It is within the power of the court having jurisdiction of a criminal action to suspend judgment on verdicts of conviction for determinate periods and for a reasonable length of time, conditioned on good behavior, and the court so acting may in its sound discretion conclusively determine from time to time whether the conditions have been violated, except where the instance being inquired into has been determined for the defendant by the jury, or other competent tribunal having jurisdiction of the criminal offense which is the sole basis of the present inquiry, in which event the result of the former action will be controlling.

**2. Judgments, Suspended—"Good Behavior"—Criminal Law.**

Where the court within the proper exercise of its authority has suspended judgment upon conviction of the defendant in a criminal action, the term "good behavior" signifies that his conduct will be such as the law authorizes, in contradistinction to bad behavior punishable by the law.

**3. Judgments, Suspended—Investigation—Findings.**

In order for the court having jurisdiction to impose a valid sentence upon a suspended judgment in a criminal action, it must be properly established by pertinent testimony that the conditions upon which the judgment had been suspended had been broken by the defendant.

**4. Same—Ultimate Facts—Intoxicating Liquors—Spirituous Liquors—Statutes.**

Findings of the trial judge, in imposing a sentence on the defendant under a suspended judgment, that the defendant had manufactured and had in his possession 150 gallons of wine, and had bought grapes therefor in another county, and persons had been seen coming from his place intoxicated, are insufficient for the imposition of the sentence, the manufacture of wine from grapes not being prohibited by the State law (C. S., 3367), and the mere possession, unless for the purposes of sale, being lawful. Nor is it *prima facie* evidence of guilt if the wine had been manufactured from grapes grown on the owner's premises. C. S., 3379.

**5. Same—Inferences.**

The findings of the trial judge on imposing a sentence under a suspended judgment in a criminal action are insufficient where they only permit the inference of a breach of the condition, and do not find the ultimate fact of guilt in infringing the criminal laws of the State.

**6. Judgments, Suspended—Investigation—Courts—Jurisdiction—Inferior Courts.**

The judge of the Superior Court having jurisdiction is not concluded in determining whether the defendant has broken the condition annexed to a suspended judgment, and passing sentence thereunder, by a judgment of a recorder's court not having jurisdiction, acquitting the defendant of the offense under investigation.

**7. Judgments, Suspended — Sentence — Federal Law—Findings—Inferences—Intoxicating Liquor—Spirituous Liquors—Findings.**

The XVIII Amendment to the Constitution of the United States, and Volstead Act designed to make it effective, does not condemn or make unlawful the manufacture of liquor for certain specified purposes, or under certain conditions, and a finding of the judge of the Superior Court that the defendant, under a suspended judgment, had manufactured large quantities of wine, is not sufficient upon which he may pass the sentence, upon condition broken, the ultimate fact of guilt not having been found by him. *S. v. Yates, ante,* 753, concerning the exercise of the pardoning power vested by our Constitution in the Governor, cited and distinguished.

**8. Same—Courts—Jurisdiction.**

The State courts have no jurisdiction over offenses arising exclusively under the XVIII Amendment to the Constitution of the United States and the Volstead Act passed for its enforcement; and where the State court has suspended judgment against the defendant conditioned on his good behavior, this without more should be considered only in connection with the State statutes on the subject of prohibition, that our courts have jurisdiction alone to enforce, and not with reference to the Federal law on the subject.

**9. Judgments, Suspended—Sentence—Collateral Agreement—Attorneys' Fees—Double Punishment.**

A sentence imposed under a suspended judgment in a criminal action upon condition of good behavior broken, is not objectionable as double

punishment for the same offense, by reason of the fact that the defendant had performed his agreement to reimburse the private prosecutors for money they paid in attorneys' fees in the action.

**10. Appeal and Error — Suspended Judgments — Case Remanded—Procedure.**

Where the Supreme Court has reversed the action of the Superior Court judge in imposing a sentence under a suspended judgment in a criminal action, for an insufficiency of finding as to the defendant's ultimate guilt, the judgment will be set aside and the cause remanded to be proceeded with according to law.

CLARK, C. J., dissenting.

APPEAL by defendant from *Kerr, J.,* at November Term, 1921, of ROBESON.

On the hearing it was made to appear that, at July criminal term preceding, defendant was convicted or submitted to an indictment charging him and three others with the crime of assault with intent to kill one Burnett. At said July term the following entries appeared upon the record: "With the consent of the solicitor, all the defendants, including the defendant Hardin, submitted to the crime of assault with a deadly weapon. Whereupon prayer for judgment was continued upon the payment of the cost, the defendant agreeing to pay $200 to the private prosecutors to reimburse them for counsel fees paid out in prosecution of this cause, which has been paid, together with the cost." And thereupon order was made in the cause as follows: "Prayer for judgment continued by consent upon payment of the cost; defendants to appear at each criminal term of this court for two years and show that they have been of good behavior and not violated the law in any respect." The case on appeal then proceeds with the further statement that, "On Friday preceding the convening of the November Criminal Term, 1921, of the Robeson Superior Court, the defendant was tried before David H. Fuller, recorder of the Lumberton District, upon two indictments, one charging him with having more intoxicating liquors in his possession than is allowed by law, and another indictment charging him with having sold intoxicating liquors contrary to law. The defendant plead not guilty to both these indictments, and the same was tried before a jury and the defendant was acquitted on both charges; thereafter, to wit, on Monday, the first day of the November Criminal Term, 1921, of the Robeson Superior Court, the solicitor prayed judgment against the defendant upon the indictment tried at the July Criminal Term, 1921, of the Robeson Superior Court, in which prayer for judgment was continued, as set out in the record. Upon this prayer for judgment by the solicitor, and upon statements of the sheriff and deputy sheriff, upon which the facts stated in the following judgment were found, the court

52—183

entered the following judgment: "At the July term of this court, 1921, the defendant Nasby Hardin was convicted by the jury of an assault with intent to kill Lacy Burnett. Prayer for judgment was continued for two years by consent and upon payment of cost. At this term of the court the defendant was called to appear and show cause that he had been of good behavior. It appeared to the court and the court finds as a fact that the defendant had manufactured and had in his possession more than 150 gallons of wine; and that the defendant had bought grapes in Bladen County; that persons had drunken of the said wine, and numerous persons had been seen going to and from the home of the said Nasby Hardin intoxicated. The said Nasby Hardin was indicted upon the attached warrant and tried by Recorder D. H. Fuller and jury; found not guilty, and these are the same charges in above findings. Thereupon the court, on motion of the solicitor, S. B. McLean, of this district, sentenced the said Nasby Hardin to be confined in the county jail of Robeson County for a term of twelve months, to be worked on the public roads of said county." Defendant excepted and appealed.

*Attorney-General Manning and Assistant Attorney-General Nash for the State.*
*Britt & Britt and McLean, Varser & Stacy for defendant.*

HOKE, J. The power of a court having jurisdiction to suspend judgment on conviction in criminal cases for determinate periods and for a reasonable length of time is fully recognized in this jurisdiction. *S. v. Hoggard,* 180 N. C., 678; *S. v. Greer,* 173 N. C., 759; *S. v. Tripp,* 168 N. C., 150; *S. v. Everitt,* 164 N. C., 399; *S. v. Crook,* 115 N. C., 760. And these and other cases on the subject hold, also, that the suspended judgment may be on the condition of good behavior of defendant for like determinate and reasonable periods of time, and that on inquiry duly instituted, the court having jurisdiction, and hearing the matter, may in its sound discretion determine for itself whether the conditions have been violated. *S. v. Greer, supra; S. v. Tripp, supra; S. v. Everitt, supra.* A position that is modified, however, where it is properly made to appear that a defendant has been acquitted by the jury or other competent tribunal having jurisdiction of the criminal offense which is the sole basis of the proceedings. As to that fact, and to that extent, the court or judge hearing the matter of the suspended judgment should be concluded.

The authorities are to the effect further that where a judgment has been suspended on condition of payment of cost and good behavior, etc., the term "good behavior," by correct interpretation, means conduct that is authorized by law and bad behavior such as the law will punish.

*In re Spencer,* 22 Federal Cases, No. 13233, pp. 921-922. And that in order to a valid sentence on such suspended judgment it must be properly established by pertinent testimony that the conditions have been broken within the meaning and purport of the above principle. *S. v. Hilton,* 151 N. C., 687. Applying the doctrine, as set forth and approved by these authorities, the sentence of the court imposing judgment on the defendant cannot be upheld, for it appears neither by evidence nor finding of the court that there has been any breach of the criminal law of the State on the part of the defendant since said judgment was suspended. True, his Honor finds that defendant had manufactured and had in his possession as much as 150 gallons of wine. That defendant had bought grapes in Bladen County and persons had been seen coming from his place intoxicated. But the manufacture of wine from grapes is not prohibited by the laws of this State. C. S., 3367. Nor is the possession of any quantity of wine an indictable offense, unless held for purpose of sale. C. S., 3379. And though the section last cited makes the possession of more than three gallons of wine *prima facie* evidence of guilt, it seems that neither the section nor the rule of proof prevails as to wines made of grapes grown on the premises of the holder. While the facts as found by his Honor may permit and perhaps justify an inference of guilt, the ultimate fact of guilt has not been found by him, nor is it otherwise established the only tribunal which has undertaken to make a finding on the question, to wit, the recorder's court, having found defendant not guilty of any criminal offense. On the record, such action of the recorder's court may not be considered as controlling on the present hearing, from the fact that such court did not have jurisdiction of the offenses charged, the punishment on conviction being discretionary, and the jurisdiction of said recorder's court for offenses of this character being restricted to cases where the punishment may not exceed a fine of $200 or imprisonment for one year, but it no doubt afforded a reason for the hesitation of his Honor in declaring the defendant guilty.

It is urged in support of the present judgment that while the facts found by his Honor may be only evidential as to a breach of the criminal laws of the State, they are sufficient of themselves to amount to a finding as to a violation of the Federal regulations on this subject as contained in the Eighteenth Amendment and the Volstead Act, passed by Congress with the view and purpose of making the amendment effective. Speaking in general terms, this Eighteenth Amendment prohibits within the territory of the United States the manufacture, sale, or transportation of intoxicating liquors for beverage purposes. And the Volstead Act, designed, as stated, to make this amendment effective, makes it a criminal offense to manufacture such liquors for the purpose indicated. The

manufacture of intoxicating liquors for other and certain specified pur-poses is not condemned either by the prohibition amendment or the act of Congress, the statute, however, providing that in order to a lawful manufacture, there must be a permit from the Revenue Department of the Government. Even under the provisions of the Federal law, there-fore, the findings of his Honor fail to declare the ultimate fact of defendant's guilt, in that it makes no reference to the purpose of defend-ant in manufacturing the 150 gallons of wine, nor is it declared whether defendant had or had not a valid permit for the purpose. Apart from this we have held in two or more recent cases that the State courts are without power or jurisdiction to administer the provisions of the Vol-stead Act. *S. v. Barksdale,* 181 N. C., 621; *S. v. Helms,* 181 N. C., 566. ⎰ When the State court, therefore, suspended judgment on condition that the defendant should be on good behavior, that is, should not break the law for two years, this, without more, should be construed as meaning the State law, the only law the court had jurisdiction to enforce, and where it appears that the defendant is keeping or has kept that law, it is both right and just that the State authorities should keep faith with him and forbear an imposition of sentence. ⎱

Again it is contended that the present judgment finds support in *S. v. Yates, ante,* 753, a decision made at the present term, in which the power of the Governor to annex conditions of similar import to a pardon granted by him, the power being upheld in a forcible and learned opinion by *Associate Justice Adams.* In that case the applicant had been con-demned by the law, and the Governor was in the exercise of the preroga-tive of mercy, under a constitutional power containing express provision that except in case of impeachment the Governor could grant pardons, commutations, etc., under such conditions as he may see proper. Acting in amelioration of defendant's condition, the Governor is purposely made a law unto himself, subject to the limitation that the conditions imposed must not be "illegal, immoral, or impossible of performance."

But not so as to the administration of the law by the courts. Here the judge sits in judgment and not in the exercise of mercy. He can only proceed along fixed and well ordered lines, that a citizen, defendant or other, may know his rights, and while he keeps faith, these rights must be recognized and preserved to him. In this case, as we have seen, judgment was suspended with the understanding that he would pay the sum of $200 to the counsel who had prosecuted him. This he has paid, and on the condition that he be of good behavior, that is, that he do not violate the State law. This condition he has thus far kept, so far as the record has established, and for anything that now appears, he is not subject to sentence.

STATE *v.* HARDIN.

We are not inadvertent to the position urged for defendant that he may no longer be punished under this conviction by reason of having paid the $200 as counsel fee, pursuant to his agreement made at the July Term, 1921, on the principle that a defendant may not be twice punished for the same offense. But the principle invoked, in our opinion, has no application to the facts of this record, it appearing that such payment constituted no part of any judgment against defendant, but was paid in pursuance of his agreement to that effect, and the prayer for judgment being expressly continued on condition of defendant's good behavior for two years, which time has not expired. Such a prayer being made for the amelioration of his condition, and presumably with his consent. *S. v. Everitt, supra; S. v. Hilton, supra; S. v. Crook, supra.*

For the reason stated, the judgment against the defendant will be set aside, and the cause remanded to be proceeded with in accordance with this opinion, and the Superior Court will inquire and determine whether there has been such a breach of the State law on the part of defendant as will justify and uphold a sentence on the suspended judgment.

Remanded.

CLARK, C. J., concurs in the body of the opinion of the court, but dissents from the conclusion. In this cause the defendant having been convicted by a jury, at July Criminal Term, 1921, of the Superior Court of Robeson, of the crime of assault with a deadly weapon, with intent to kill, by the consent of the solicitor and the defendant an entry was made in the cause as follows: "Prayer for judgment continued by consent upon payment of costs; defendant to appear at each criminal term of this court for two years and show that he has been of good behavior and *not violated the law in any respect.*"

At the very next term of the court, in November, 1921, upon prayer of judgment by the solicitor and upon statement of the sheriff and deputy sheriff, upon which the facts stated in the following judgment were found, the court entered the following judgment: "At the July term of this court, 1921, the defendant, Nasby Hardin, was convicted by the jury of an assault with intent to kill Lacy Burnett, prayer for judgment was continued for two years by consent and upon payment of costs. At this term of the court the defendant was called to appear and show cause that he had been of good behavior. It appears to the court, and the court finds it a fact, that this defendant had manufactured and had in his possession as much as 150 gallons of wine, and that the defendant had bought grapes in Bladen County; that persons had drunken of the said wine, and numerous persons had been seen going to and from the home of the said Nasby Hardin intoxicated. Thereupon the court,

on motion of the solicitor, S. B. MacLean, of this district, sentenced the said Nasby Hardin to be confined in the county jail of Robeson County for a term of 12 months, to be worked on the public roads of said county."

Upon the said finding of facts by the judge, the only question that can arise is whether the defendant has kept the conditions upon which the sentence was suspended at the previous term, that is, has he been "of good behavior and not violated the law in any respect."

The Constitution of the United States provides as follows, Article VI (2): "This Constitution, and the laws of the United States which shall be made in pursuance thereof, . . . shall be the supreme law of the land and the judges in every state shall be bound thereby, anything in the Constitution and laws of any state to the contrary notwithstanding." This is an injunction upon every state judge which in his oath of office he is sworn to obey as the *highest* law, any state constitution or law to the contrary notwithstanding.

The Eighteenth Amendment to the United States Constitution provides: "After one year from the ratification of this article, the manufacture, sale, or transportation of intoxicating liquors within, the importation thereof into, or the exportation thereof from the United States, and all territory subject to the jurisdiction thereof, for beverage purposes is hereby prohibited." Section 2 of that article provides: "The Congress and the several states shall have concurrent power to enforce this article by appropriate legislation"; and the Volstead Act, passed in pursuance of that amendment, in section 3, makes it a criminal offense to manufacture intoxicating liquors, and defines wine to be intoxicating liquor, and provides further that in order to be a lawful manufacture there must be a permit from the Revenue Department of the Government.

As the Constitution of the United States, and the laws made in pursuance thereof, are the highest law of this land, the trial judge could not have held that these facts found by him were not a breach of the conditions upon which judgment had been suspended, and that the defendant had been "of good behavior and had not violated the law *in any respect.*" He had violated the highest law known to this Country, the Constitution of the United States, and the laws made in pursuance thereof. It was suggested in the argument here by the defendant's counsel that the defendant might have procured a permit from the United States Revenue Department to make this wine, but there is no such suggestion in the evidence, or in the record, and being a matter in defense, it cannot be assumed. The burden was upon the defendant to allege and to prove the exception that would take him from under the statute which denounces such conduct. This is an elementary and uncontradicted principle of criminal law.

STATE *v.* HARDIN.

It was further suggested by counsel that the judge did not find as a fact that the defendant had violated the law, but when the court found that the defendant "had manufactured and had in his possession as much as 150 gallons of wine; that he had bought grapes in Bladen County and numerous persons had drunken of said wine and had been seen coming from his place intoxicated," he found him guilty of the acts denounced by the law as a crime. It was unnecessary for the judge to give a title to the offense or to add more than this statement of acts which the defendant had committed and which were violations of law.

It was suggested that this Court does not execute the laws of the United States, but the contract of the defendant upon which this judgment was suspended was that he should not *violate the law in any respect,* and if there had been a State statute expressly authorizing the defendant to manufacture wine and buy grapes and sell the wine, it would have been a nullity in view of the United States Constitution, Art. VI, sec. 2, that the Constitution and the laws of the United States in pursuance thereof "shall be the supreme law of the land, and the *judges in every state* shall be bound thereby, anything in the constitution and laws of any state to the contrary notwithstanding."

It should be noted that the defendant is not on trial for the manufacture and sale of wine, but had already been convicted by a jury for an assault with intent to kill. That verdict stands. Judgment thereon was simply *suspended* upon a contract that he should not violate the law "in any respect," and a breach of the law, whether it is municipal, State, or Federal, is a violation of the law, and of the obligation "of good behavior." It is not required that the breach of the law shall be in any one particular respect. It is true that the State, except in a few cases, does not enforce the Federal laws, but when the Eighteenth Amendment forbids doing the things which the defendant has done, it strikes out any state statute, or any proviso in a state statute, if there had been any, which would permit such things to be done, and they become nonexistent in the state statute.

It was contended by the defendant that C. S., 3367, permits wine and cider to be manufactured from grapes, berries, fruits, etc., but it must be noted: (1) That this proviso was enacted long before the ratification of the Eighteenth Amendment, and the enactment of the Volstead Act has had the effect of striking out the permission given by that proviso just as the Nineteenth Amendment struck the word "male" out of every state constitution as a qualification for voting. And, besides, C. S., 3378, a later enactment, forbids in any manner "handling spirituous, vinous, or malt liquors in this State"; and C. S., 3379 (2) makes it *prima facie* evidence of violation of law to possess more than three gallons of spirituous liquors at any time. That section, without that

STATE v. HARDIN.

proviso, absolutely forbids any one "to manufacture, or in any manner make or sell, or otherwise dispose of for gain, any spirituous, vinous, fermented, or malt liquors or intoxicating bitters within the State of North Carolina"; and as the superior law has stricken out that proviso, even if the defendant were on trial in a state court for this offense, he would be guilty, for the proviso cannot possibly exempt him. To do that would be to hold that the State act can nullify the Federal Constitution and the laws enacted in pursuance thereof; (3) even if the State could thus nullify the provisions of the Federal amendment and statute, still it would have been incumbent upon the defendant, if on trial, to allege and to set up the fact that this wine was manufactured by him, and that it was not drunk (in the language of the proviso itself) "upon the premises." Our statute, C. S., 3368, as well as the Volstead Act, both prescribe that wine is an intoxicating liquor.

I concur in the opinion of the Court that the action of the recorder in finding the defendant not guilty is no estoppel upon the action of the Superior Court putting in operation a suspended judgment, and which cannot be interfered with by judgment in the recorder's court. *S. v. Greer,* 173 N. C., 759, which, besides, had no jurisdiction. *S. v. Hicks,* 179 N. C., 733.

If a man commits a homicide it may be that it was done in the heat of passion or to avenge a fancied or real wrong done him; if he commits larceny, it may be done under the strong influence of hunger of himself or his wife and children; if he commits rape, it may be under the influence of passion; and so of many offenses against the law there may be found more or less extenuating circumstances; but that cannot be said of this offense. To violate the law in this respect the man does not act from passion or strong impulse, or any necessity. He proceeds upon the most sordid basis, and deliberately, with preparation and secrecy, violates the law of his Country, for the sordid purpose of gain. Neither is this a slight offense. It comes as near treason as any in the calendar, for it sets at defiance the solemn enactment expressing the highest and most deliberate will of the supreme power of this Country. It was not enacted in haste, but after nearly a century of discussion and debate. It was considered of sufficient importance to the public welfare to be enacted by a two-thirds vote in each House of Congress, and was then ratified by the Legislatures of 46 out of the 48 states in this Union. It was enacted to lessen poverty and crime and other matters detrimental to the public welfare. Every voter, as well as every office holder, has sworn to maintain that provision as the highest law between the two great oceans. Every state judge has sworn to support such provision, "the constitution and laws of any state to the contrary notwithstanding." The learned judge who tried this case was acting in the performance of

his duty in calling down upon the head of this defendant punishment for the high crime of which he had been convicted and judgment on which, at his request, had been suspended upon a pledge that for two years this defendant would not violate the law *in any respect* upon penalty of the suspended judgment being put in force.

Judge Kerr having found the facts above set out, properly held that the defendant had not kept his obligation *"not to violate the law in any respect,"* for he had violated the highest law, which even an express State statute could not nullify—much less could a *proviso* as to facts unalleged and unproven do so, and the judge did his duty in revoking the suspension of the judgment when the defendant had so speedily broken the conditions upon which it had been suspended.

It was once an accepted saying that "the King's writ does not run in Connaught"—a wild, lawless province in the west of Ireland. But the Constitution and laws of the United States are as much authority in North Carolina as anywhere else throughout the Union. The judge having found that the defendant had "bought grapes in another county, had manufactured *as much* as 150 gallons of wine, that numerous men had drunken of this wine, and had been seen coming from defendant's place intoxicated," if it was error for the judge in this case to hold that the defendant had broken his obligation (on which the judgment against him had been suspended) "not to violate the law in any respect," then the laws of the United States, set out in the Volstead Act, do not "run in North Carolina," and it would not be "a violation of law in any respect" for a great corporation to buy grapes all over the State, manufacture many thousands of gallons of wine, that numerous men should drink of that wine and be seen coming from their factory intoxicated. The sole difference is that here the defendant, already convicted of a serious crime with a judgment suspended on condition he shall be of good behavior and "not violate the law in any respect" has manufactured *as much* as 150 gallons—how much more than that does not appear.