This is a criminal action and the facts pertinent to this appeal are as follows:
1. The defendant and Robert C. Summerville were convicted in the Superior Court of Buncombe County, North Carolina, on 22 January, 1935, on counts one and two of the bill of indictment under which they were tried. Said counts being as follows:
"First Count: The jurors for the State, upon their oath present that William Dudley Pelley, Robert C. Summerville, Don D. Kellogg and H. M. Hardwicke, late of the County of Buncombe, State of North Carolina, on or about the first day of April, 1932, and at divers other times before and after said date, with force and arms, at and in said County, did unlawfully, wilfully, knowingly, fraudulently and feloniously sell and cause to be sold, and offered for sale, and caused to be offered for sale, and solicited the sale and distribution of securities and stocks of Galahad Press, Incorporated, a corporation organized under the laws of the State of New York, with its principal place of business in Asheville, North Carolina, to divers persons, through advertisement and otherwise, in a periodical and magazine published, mailed and distributed in said State and County, entitled `Liberation,' and by letters, circulars, etc., which said securities and stocks were not exempted by and not registered as provided in the provisions of chapter 149 of the Public Laws of North Carolina, enacted by the General Assembly of North Carolina, Session of 1927, and Chapter 71 A of the Consolidated Statutes of North Carolina and all acts amendatory thereof, without having first registered as a dealer and dealers, and salesman and salesmen in the office of the Corporation Commission and Commissioner of *Page 490 
North Carolina, as provided by Chapter 149 of the Public Laws of North Carolina, enacted by the General Assembly of North Carolina, Session 1927, and Chapter 71 A of the Consolidated Statutes of North Carolina and all acts amendatory thereof, against the form of the statute in such cases made and provided, and against the peace and dignity of the State.
"Second Count: The jurors for the State upon their oath further present that William Dudley Pelley, Robert C. Summerville, Don D. Kellogg and H. M. Hardwicke, late of the County of Buncombe, State of North Carolina, on or about the first day of April, 1932, and at divers other times before and after said date, with force and arms, at and in said County, did unlawfully, wilfully, knowingly and feloniously and for the purpose of selling securities and stocks of Galahad Press, Inc., a corporation organized under the laws of the State of New York, with its principal place of business in Asheville, North Carolina, in this State fraudulently represent to the purchaser and purchasers, and prospective purchaser and purchasers thereof, the amount of dividends, interest and earnings which such securities will yield, in a magazine, periodical and publication published, mailed and distributed in said County of Buncombe, State of North Carolina, entitled `Liberation' which said false representations as aforesaid were to the effect that:
"`It is a fact surpassing strange that those who have been most active in the financial and moral support of the work done by the Galahad Press, The League for the Liberation, and The Foundation for Christian Economics this past year, have suffered few losses of note.
"`The work which is being done throughout the nation in promoting these wholesome christian principles, carries with it a sturdy, constructive vibration. The growth and prosperity of the Galahad Press this year when other publishing projects were losing or falling on every hand carries an esoteric significance not to be ignored.
"`The first year of the Galahad Press closed on February 7. Starting on a cash capital of $40, it forged its way ahead at a time of continually falling markets and ruinous depression, gaining in volume of business month by month, until it had done $56,731.57 in amount of business for its first fiscal year.
"`It printed and circulated nearly 150,000 copies of its publications and in connection with The League for the Liberation it disposed of 90,000 copies of the Weekly Liberation lessons. It paid out $22,372.83 in salaries to its workers and its item of postage alone reached $4,095.21. If its present rate of prosperity continues, it will meet its preferred stock dividend by its annual stockholders meeting-date in June.' . . .
"`There remains in the treasury of The Galahad Press over $10,000 of preferred stock untouched by the volume of business transacted this *Page 491 
past year. This stock is valued at $10 per share and pays a 6 per cent cumulative dividend,' — when in truth and in fact the said Galahad Press, Inc., a corporation organized under the laws of the State of New York, was not in a prosperous condition and was not in a position to meet its preferred stock dividends, and its preferred stock was not paying 6% dividend, and those who had been most active in the financial support of the work done by The Galahad Press had suffered losses of note, and the disbursements had been much heavier than set forth in said representations, and the said Galahad Press was in an insolvent and failing condition and had lost heavily during the time mentioned in said representations, against the form of the statutes in such cases made and provided, and against the peace and dignity of the State."
2. By and with the consent of defendants, in open court expressed through counsel, prayer for judgment was continued until the regular term of the Superior Court for the trial of criminal cases, for Buncombe County, on 18 February, 1935, at which time the final judgment was to be entered.
3. On 18 February, 1935, the following judgment was entered:
". . . The judgment of the court is, as to both defendants, the judgment being individual, that the defendant Pelley be confined in State's Prison at Raleigh, at hard labor, for a period of not less than one, nor more than two years.
"The foregoing sentence of imprisonment is suspended for a period of five years, on the following conditions:
"1. That the defendant Pelley pay a fine of One Thousand ($1,000) Dollars and the costs of the case, which bill of cost has been approved by the Court as made up by the Clerk, and which, under the authority of the court is to include the total amount ordinarily for which the bill is made up by the Clerk, together with the exact amount which Buncombe County has heretofore paid out for the expenses of the jury during the thirteen days and the expenses of the official Court stenographer, it being the intent of the Court to reimburse fully the County for each amount expended by it.
"2. That the defendant be and remain continuously of good behavior.
"3. That he not publish and (or) distribute in the State of North Carolina any periodical which has to do with, or contains in it any statement relating to a stock sale transaction or any report of any corporation as to its financial value, or with the purpose of effecting a sale of stock in said corporation, without complying with the capital sales issues statute. . . .
"On Count No. 2, against the defendants Pelley and Summerville, prayer for judgment continued for five (5) years."
4. On 19 October, 1939, his Honor, Zeb V. Nettles, Judge presiding, October Term, Superior Court of Buncombe County, ordered capias to *Page 492 
issue in the case of State v. Pelley, and the defendant William D. Pelley to be placed under a $10,000.00 bond, to appear before the Judge of the Superior Court of Buncombe County, at the term of court beginning on the first Monday after the second Monday in November, 1939, "then and there to answer the charge of the State against William D. Pelley on an indictment for judgment upon conviction for felony."
5. Capias was issued and returned by the sheriff of Buncombe County, N.C. with the following entry thereon: "Received October 19, 1939. Due search made and defendant not to be found in Buncombe County or the State of North Carolina."
Efforts to locate the defendant were continued after the return of the capias issued 19 October, 1939, until the arrest of the defendant 10 February, 1940. The usual "Wanted" posters were distributed throughout the United States by the authorities in Buncombe County, stating Pelley was wanted by the sheriff's department and the courts of Buncombe County, North Carolina.
6. The defendant was arrested in Washington, D.C., 10 February, 1940, by the police authorities in the District of Columbia, upon a capias or alias
capias issued out of the Superior Court of Buncombe County, N.C. The defendant refused to return to North Carolina, whereupon the Governor of North Carolina issued requisition papers to the proper official of the District of Columbia for the extradition of the defendant to this State.
7. The defendant applied for his release in a habeas corpus proceedings in the United States District Court for the District of Columbia, relief was denied by said court, appeal was taken to the United States Court of Appeals for the District of Columbia, and the decision of the lower court affirmed. Petition for writ of certiorari to the Supreme Court of the United States was denied. A motion to withhold the order denying petition for writ of certiorari to the Supreme Court of the United States, likewise, was denied. After the decision of the Supreme Court of the United States, denying motion to withhold the order denying petition for writ ofcertiorari to said Court, the defendant, as required by the original order of the United States District Court for the District of Columbia, returned to Buncombe County, N.C. in October, 1941, where he was taken into custody by the sheriff of Buncombe County on an alias capias 24 October, 1941. Defendant applied for a writ of habeas corpus 25 October, 1941. Bond was fixed and the defendant released. By consent of the State and the defendant, the hearing on its merits and the application for writ of habeascorpus were heard at the January Term, 1942, of the Superior Court of Buncombe County, when and where the application for a writ of habeas corpus
was denied and the following judgment entered: *Page 493 
"This cause coming on to be heard and being heard before His Honor, F. Donald Phillips, Judge presiding over the regular January A. D., 1942 Criminal Term of the Superior Court of Buncombe County, State of North Carolina, upon motion of the Solicitor that the sentence hitherto imposed upon the defendant by His Honor, Wilson Warlick, Judge presiding at the regular February A.D. 1935 Term of the Superior Court of Buncombe County, be put into effect on the first count set forth in the bill of indictment herein and in said judgment, and also praying for judgment under the second count in said bill of indictment and in said judgment.
"The Court heard all the evidence and the argument of counsel in the presence of the defendant and his counsel, and the court finds as a fact that the pertinent evidence before the court in this hearing that the defendant has violated the terms of the suspended sentence under said Count No. 1 and did not remain of good behavior during the term of said suspended sentence and during the term of said suspended sentence has violated the following criminal laws of the State of North Carolina in force and effect during the term of said suspended sentence, as follows:
"(1) That the defendant wilfully, unlawfully, knowingly and deliberately stated, delivered and transmitted to the publisher and publishers of a newspaper and newspapers and periodical and periodicals for publication therein within the State of North Carolina false and libelous statements concerning a person, to-wit, Franklin D. Roosevelt, President of the United States of America, and did thereby secure the publication of the same, in violation of the provisions of Section 4229 of the Consolidated Statutes of North Carolina.
"(2) That the defendant during the term of said suspended sentence wilfully, unlawfully, knowingly and deliberately, with intent to sell and dispose of merchandise, service, books, pamphlets, periodicals, and other things, offered to the public for sale and distribution and with intent to increase the consumption thereof, and to induce the public to enter into obligations relating thereto, did make public, disseminate, circulate and place before the public, and cause to be made public, disseminated and circulated and placed before the public within the State of North Carolina in a newspaper and newspapers and other publications and in the form of books, notices, hand bills, circulars and pamphlets, an advertisement and advertisements regarding said merchandise, service and other things, which advertisement and advertisements contained assertions, representations and statements of fact which were untrue, deceptive and misleading, in violation of the provisions of Section 4290 of the Consolidated Statutes of North Carolina.
"(3) That the defendant wilfully, unlawfully, knowingly and deliberately during the term of said suspended sentence was guilty of contempt *Page 494 
of court and wilfully, unlawfully, knowingly and deliberately violated the provisions of Section 978, Subsection 7, of the Consolidated Statutes of North Carolina, by publishing and making public within the State of North Carolina grossly inaccurate reports of the proceedings in court about the trial of the defendant and other matters pending before said court, with respect to said defendant, with intent to misrepresent and to bring into contempt the said Court.
"(4) That the defendant wilfully, unlawfully, knowingly and deliberately during the term of said suspended sentence was guilty of violating Section 4180 of the Consolidated Statutes of North Carolina, and did wilfully, knowingly, unlawfully and deliberately within the State of North Carolina and during the term of said suspended sentence, organize and continue to organize, promote and foster a secret political and military organization, and do and cause to be done various acts and things in violation of the provisions of said statute of the kind and character prohibited and condemned by said statute.
"And the Court further finds as a fact from the pertinent evidence adduced at this hearing that during the term of said suspended sentence, to-wit, at the regular October Criminal Term, 1939, of the Superior Court of Buncombe County, on appropriate order of the Judge presiding over said court, a capias was issued out of said court for the defendant in this case; that the sheriff of Buncombe County by authority of said capias made diligent, continuous, thorough and prolonged search for the defendant in the County of Buncombe and in the State of North Carolina; and made substantially the following return on said capias: To November Term, 1939. Due search made and the defendant cannot be found within the County of Buncombe or the State of North Carolina; and the court further finds from the pertinent evidence in this case that the defendant continuously from about the first day of August, 1939, absented himself from the State of North Carolina, and thus designedly avoided the service of said capias, and intentionally kept himself without the jurisdiction of this court; that from time to time after the issuance of said capias numerous alias capiases were issued out of said court for the apprehension of the said defendant; none of which were served or executed for the reason that the defendant was absent from the State of North Carolina and his whereabouts could not be ascertained; that on the 10th day of February, 1940, and within the term of said suspended sentence, the defendant was found in the City of Washington and was taken into custody by lawful officers of the District of Columbia and City of Washington on a capias or alias capias issued out of the Superior Court of Buncombe County, North Carolina, and thereupon the defendant resisted the command of said capias and refused to return to the State of North Carolina and to the jurisdiction of this court and in pursuance of his refusal to return to the jurisdiction of this court *Page 495 
resisted extradition proceedings issued by the State of North Carolina and on habeas corpus proceedings sued out by him in the District of Columbia delayed his return to the State of North Carolina by appealing to the United States District Court for the District of Columbia, then to the United States Circuit Court of Appeals for the District of Columbia and then to the Supreme Court of the United States, and finally in obedience to the orders and decisions of said courts was forced to return to the State of North Carolina and to the jurisdiction of this court during the month of October, 1941, and then and there being represented by counsel and present in court himself this hearing was by consent of the defendant and his counsel and the State of North Carolina continued to this term of court, and the defendant gave bond in the sum of $10,000.00 for his appearance before this Court.
"The Court further finds as a fact that the defendant and his counsel were present in court at the time of the judgment entered by His Honor, Wilson Warlick, at the February A.D. 1935 Term of the Superior Court of Buncombe County, and consented to and acquiesced in said judgment, including said sentence and said prayer for judgment continued.
"It is, therefore, ordered and adjudged that the prison sentence imposed by His Honor, Wilson Warlick, at the February A.D. 1935 Term of the Superior Court of Buncombe County, confining the defendant to the State Prison at Raleigh at hard labor for a period of not less than one nor more than two years, be, and the same hereby is put into effect and the defendant is ordered into custody for the purpose of commencing the service of said sentence, and the Clerk of the Court is ordered to issue commitment to put the said prison sentence into effect.
"And the Solicitor at this term having also prayed for judgment under the second count in said bill of indictment and upon such prayer and upon such motion of the Solicitor, the judgment of the Court on the second count in said bill of indictment is that the defendant be confined in the State Central Prison at hard labor to wear stripes for a period of not less than two nor more than three years, this sentence to run concurrently with the sentence put into effect on the first count in said bill of indictment; and the defendant is ordered into custody for the purpose of commencing the service of said sentence on said second count, and the Clerk of this Court is ordered to issue commitment to put the said prison sentence on said count into effect.
F. DONALD PHILLIPS, Judge Presiding."
Defendant appealed to Supreme Court, assigning error.
The record contains 200 exceptive assignments of error. After a careful examination of each of them, we are of opinion that those numbered 1 through 182, 185 through 189, and 196 are without substantial merit. The remaining 12 may be disposed of by a consideration of the following questions: (1) Did the court have power to enter a judgment in this cause, at the January Term, 1942, of the Superior Court of Buncombe County? (2) Did the defendant violate the conditions of the judgment entered 18 February, 1935?
In the judgment entered against the defendant by the court, 18 February, 1935, the prison sentence entered on Count 1 was suspended for a period of five years upon certain conditions. On Count 2, under which the defendant had also been convicted, prayer for judgment was continued for five years.
Unquestionably if the court had made no effort to obtain custody of the defendant until after the expiration of five years from and after 18 February, 1935, the court would have been without authority to enter judgment. S. v. Hilton, 151 N.C. 687, 65 S.E. 1011; S. v. Gooding,194 N.C. 271, 139 S.E. 436. However, at any time within five years after the entry of the judgment, upon alleged violation of the conditions upon which the judgment was suspended, the court had the right to require the defendant to appear before said court, by notice or by capias, if necessary, and inquire into the alleged violation of the conditions in said judgment, and, if found to be true, to put the suspended sentence into effect and to enter judgment on the second count, if in the sound discretion of the court the facts justified such action. S. v. Shepherd,187 N.C. 609, 122 S.E. 467; S. v. Phillips, 185 N.C. 614,115 S.E. 893; S. v. Greer, 173 N.C. 759, 92 S.E. 149.
Public Laws 1937, ch. 132, sec. 4 (N.C. Code, sec. 4665 [4]), provides: ". . . At any time during the period of probation or suspension of sentence, the court may issue a warrant and cause the defendant to be arrested for violating any of the conditions of probation or suspension of sentence. . . . Upon such arrest, with or without warrant, the court shall cause the defendant to be brought before it in or out of term and may revoke the probation or suspension of sentence, and shall proceed to deal with the case as if there had been no probation or suspension of sentence."
The above statute does not enlarge the power of our courts in respect to judgments of the character under consideration. The courts in this jurisdiction have exercised these powers through the years as a part of their inherent common law rights. S. v. Hilton, supra; S. v. Everitt,164 N.C. 399, 79 S.E. 274.
Did the defendant, by absenting himself from the State of North Carolina from about 19 October, 1939, until October, 1941, prevent the *Page 497 
court from determining within the aforesaid five-year period, whether or not the conditions of the suspended judgment had been violated, thereby suspending the limitation of time for that period? We think so. The defendant was present in open court on 18 February, 1935, when the prison sentence was suspended and the prayer for judgment was continued, and accepted the conditions on which said sentence was suspended. Upon a violation or an alleged violation of said conditions, it was the duty of the defendant to respond to the notice of the court in order that the court might determine whether or not he had violated the conditions in said judgment. S. v. Crook, 115 N.C. 760, 20 S.E. 513; S. v. Everitt, supra. When the defendant departed the jurisdiction of the court, the time clock stopped and the proceedings thereafter are to be considered as having transpired within the five-year period.
Statutes of limitation do not run in favor of an accused person while he is a fugitive from justice. "The fact that the statute had begun to run in favor of accused before he fled from justice does not prevent his flight from operating as a suspension of the statute, and he cannot insist in such a case that the time of his absence shall be computed as a part of the statutory limitation." 16 C. J., p. 229, sec. 351.
"To constitute one a fugitive from justice from a given state it is essential that the person having been within the demanding state shall have left it and be within the jurisdiction of the state from which his return is demanded, and that the person shall have incurred guilt before he left the former state and while bodily present therein." 25 C. J., 257, sec. 12.
This defendant was arrested on 10 February, 1940, within five years from the entry of the original judgment herein, by the police authorities of the city of Washington, D.C., on a capias or alias capias issued out of the Superior Court of Buncombe County, N.C. The defendant cannot complain at the delay in entering the judgment from which he now appeals. The evidence discloses that defendant knew the authorities in Buncombe County wanted him for the alleged violation of the conditions of his suspended sentence, and he sought to remain beyond the jurisdiction of the court until after 18 February, 1940. After his arrest defendant refused to return to North Carolina. The Governor of North Carolina issued requisition papers to the proper official of the District of Columbia for the extradition of the defendant to this State.
The defendant applied for his release in habeas corpus proceedings in the United States District Court for the District of Columbia, relief was denied by said court, appeal was taken to the United States Court of Appeals for the District of Columbia, and the decision of the lower court affirmed. In this case, in which defendant resisted extradition to North Carolina, he was adjudged a fugitive from justice by the Federal Court.Pelley v. Colpoys, 122 F.2d 12. Petition for writ of certiorari to *Page 498 
the Supreme Court of the United States was denied. Pelley v. Colpoys, U.S. Sup. Court, 86 Law Ed., 69. The motion to withhold the order denying petition for writ of certiorari was denied. Pelley v. Colpoys, 86 U.S. (Law. Ed.), 87. After the decision of the Supreme Court of the United States, denying motion to withhold the order denying petition for writ ofcertiorari to said Court, the defendant, as required by the original order of the United States District Court for the District of Columbia, returned to Buncombe County, N.C. in October, 1941, where he was taken into custody by the sheriff of Buncombe County on an alias capias 24 October, 1941. Defendant applied for a writ of habeas corpus 25 October, 1941. Bond was fixed and the defendant released. By consent of the State and the defendant, the hearing on its merits and the application for writ of habeascorpus were heard at the January Term, 1942, of the Superior Court of Buncombe County.
The failure to enter judgment within the five-year period, prescribed in the original judgment, was not due to the lack of diligence on the part of the court, but was chargeable solely to the conduct of defendant. Therefore, we hold that the court had not lost jurisdiction of the defendant by reason of the lapse of time and that the court had power to enter judgment at January Term, 1942, of the Superior Court of Buncombe County.
The defendant contends that the original judgment in this cause was an alternative one and that he has fully complied with the terms thereof. Under the provisions of chapter 190, sec. 23, Public Laws 1925, as amended by chapter 149, sec. 23, Public Laws 1927 (section 3924 [w], N.C. Code of 1939), the statute under which the defendant was tried and convicted, the court was authorized to imprison a person convicted thereunder for not more than five years or impose a fine of not more than $1,000.00, or both. Therefore, the court was authorized to impose a fine and a prison sentence. The judgment herein is not objectionable in that respect. Surely in the light of the decisions of this Court, no one can seriously question the power of the court to suspend the prison sentence upon conditions to be observed by the defendant. In the case of Myers v. Barnhardt, 202 N.C. 49,161 S.E. 715, Stacy, C. J., said: "The practice of suspending judgments in criminal prosecutions, upon terms that are reasonable and just, or staying executions therein for a time, with the consent of the defendant, has so long prevailed in our courts of general jurisdiction that it may now be considered established, both by custom and judicial decision, as a part of the permissible procedure in such cases. S. v. Edwards,192 N.C. 321, 135 S.E. 37; S. v. Everitt, 164 N.C. 399, 79 S.E. 274;S. v. Hilton, 151 N.C. 687, 65 S.E. 1011."
Likewise, the court had power to continue the prayer for judgment on the second count. In the case of S. v. Ray, 212 N.C. 748, 194 S.E. 472 *Page 499 Devin, J., said: "The power of the Superior Court to continue the prayer for judgment and to suspend the execution of a judgment, upon conditions, in proper cases and upon terms that are reasonable and just, and thereafter, upon determination that the conditions had been breached, to impose sentence and execute the judgment, has been upheld by this Court in numerous cases. S. v. Hilton, 151 N.C. 687, 65 S.E. 1011; S. v.Everitt, 164 N.C. 399, 79 S.E. 274; S. v. Burnett, 174 N.C. 796,93 S.E. 473; S. v. Hardin, 183 N.C. 815, 112 S.E. 593; S. v. Shepherd,187 N.C. 609, 122 S.E. 467; S. v. Edwards, 192 N.C. 321,135 S.E. 37; Berman v. U.S., 82 Law Ed. (U.S.), 212. The defendant, having pleaded guilty of a misdemeanor, and having consented, or, at least, offered no objection to the conditions upon which the prayer for judgment was continued, in the one instance, and the execution of sentence suspended in the other, is in no position now to complain.S. v. Crook, 115 N.C. 760, 20 S.E. 513." S. v. Wilson, 216 N.C. 130,4 S.E.2d 440.
The defendant accepted the conditions upon which the prison sentence was suspended, and he has no right to challenge its validity now, not having appealed therefrom at the time of its entry. S. v. Ray, supra; S. v.Henderson, 207 N.C. 258, 176 S.E. 758.
Did the defendant, prior to 19 October, 1939, violate the conditions on which his prison sentence was suspended? One of the conditions on which the sentence was suspended for five years was: "That the defendant be and remain continuously of good behavior." What constitutes good behavior is defined in 15 Am. Jur., sec. 484, p. 138, as follows: "Good behavior means conduct conforming to the law." That definition is in accord with the interpretation of the meaning of "good behavior" by this Court. S. v.Hardin, 183 N.C. 815, 112 S.E. 593.
In the judgment of the court entered in January, 1942, his Honor found the defendant had violated the terms of the suspended sentence and did not remain of good behavior during the term of said suspended sentence, and that the defendant had violated the following criminal laws of the State of North Carolina, in force and effect during the term of said suspended sentence, as follows: Sections 4229; 4290; 978, subsection 7; and 4180, of the Consolidated Statutes of North Carolina. These findings of fact appear in the judgment copied in the statement of facts in this case, together with the further finding of fact that the defendant absented himself from North Carolina continuously from about 1 August, 1939, until October, 1941.
The defendant insists that the court admitted incompetent evidence at the hearing, and therefore these findings of fact should not be sustained. His Honor, in determining whether or not the terms of the suspended judgment had been violated was not bound by the strict rules *Page 500 
of evidence required in a jury trial. This Court said, in S. v. Greer,supra: "When judgment is suspended in a criminal action upon good behavior, or other conditions, the proceedings to ascertain whether the terms have been complied with are addressed to the reasonable discretion of the judge of the court, and do not come within the jury's province. The findings of the judge, and his judgment upon them, are not reviewable upon appeal unless there is a manifest abuse of such discretion." S. v. Hoggard,180 N.C. 678, 103 S.E. 891.
The evidence heard by the court, in a proceedings of this character, is not for the purpose of punishing the defendant for the offenses committed since judgment was suspended, or the prayer for judgment continued, but to determine what punishment shall be imposed under the original judgment for offenses for which he has been convicted. Defendant is not on trial for a new offense. S. v. Everitt, supra.
Certain testimony of this defendant before the Dies Committee was offered by the State, most of which was admitted without objection. That evidence, upon objection, was inadmissible by reason of the provisions of U.S.C.A., Title 28, sec. 634. However, a careful perusal of the testimony leads to the conclusion that sufficient competent evidence was introduced by the State in this hearing to sustain his Honor's findings of fact. These findings of fact and the judgment entered upon them were matters to be determined in the sound discretion of the court, and the exercise of that discretion, in the absence of gross abuse, cannot be reviewed here. S. v.Everitt, supra; S. v. Greer, supra. There is no evidence of an abuse of discretion by his Honor in this proceedings.
The judgment of the court below is
Affirmed.