HAMPSON, Judge.
 

 *547
 

 Factual and Procedural Background
 

 This matter involves a Motion for Appropriate Relief (MAR) filed by Daniel Yair Marino (Defendant) on 25 October 2017, seeking relief from criminal convictions. The Record based upon the proceedings on the MAR below tends to show the following relevant facts:
 

 On 16 September 2013, a Guilford County Grand Jury indicted Defendant for one count of Trafficking in Cocaine, a Class D felony; two counts of Trafficking in Marijuana, Class H felonies; one count of Possession with Intent to Sell or Deliver Marijuana, a Class I felony; and one count of Maintaining a Dwelling for the Keeping or Selling of Marijuana and Cocaine, a Class I felony. Pursuant to a plea arrangement, Defendant entered an
 
 Alford
 
 plea to the charged offenses on 11 June 2015. The terms and conditions of the parties' plea agreement provided:
 

 1. That the charges shall be consolidated [under the Class D Trafficking in Cocaine charge] for judgment purposes.
 

 2. That prayer for judgment shall be continued until on or after the criminal term beginning pursuant to [N.C. Gen. Stat. §] 90-95(h)(5). That the defendant agrees, if called upon by the State, to provide truthful testimony against any charged co-defendant in these matters.
 

 3. That upon the State's prayer for judgment, the Court shall impose any additional terms deemed appropriate.
 

 Approximately 19 months later, the State prayed for entry of judgment against Defendant. The trial court held Defendant's sentencing
 
 *548
 
 hearing on 4 January 2017. At this hearing, the State and defense counsel were given the opportunity to present arguments regarding Defendant's sentence. The State informed the trial court that Defendant had provided the State with "substantial assistance" within the meaning of
 
 N.C. Gen. Stat. § 90-95
 
 (h)(5),
 
 [1]
 
 and Defendant's counsel urged the trial court to consider Defendant's efforts when sentencing Defendant.
 

 After finding Defendant provided substantial assistance to the State, the trial court sentenced Defendant to an active term of a minimum of 48 months and a maximum of 70 months, and ordered Defendant to pay a $25,000 fine. This sentence was substantially lower than the sentence Defendant would have received had he not provided substantial
 
 *692
 
 assistance to the State, which the trial court acknowledged was a minimum of 175 months and a maximum of 222 months, plus a $250,000 fine. The written Judgment was entered on 6 January 2017; however, there was a clerical error in this Judgment, which was corrected by written Judgment on 27 February 2017.
 

 On 25 October 2017, Defendant filed a MAR requesting the trial court set aside the sentence imposed on Defendant. According to Defendant's MAR, the trial court lacked jurisdiction to enter the sentence because of N.C. Gen. Stat. § 15A-1331.2, which requires the trial court enter final judgment on certain high-level felonies, including Class D felonies, within 12 months of the trial court entering a prayer for judgment continued (PJC). After hearing arguments from the State and defense counsel, the trial court issued an Order denying Defendant's MAR (MAR Order) on 26 January 2018. In its MAR Order, the trial court concluded Section 15A-1331.2 does not mention jurisdiction and that a violation of this statute does not divest the trial court of jurisdiction to enter judgment on a PJC after 12 months. Defendant petitioned this Court for a Writ of
 
 Certiorari
 
 to review the MAR Order. We granted Defendant's Petition for the purpose of granting Defendant an appeal. Defendant has prosecuted his appeal, and we now review the merits of his argument.
 

 Issue
 

 The sole issue on appeal is whether Section 15A-1331.2 of our General Statutes divested the trial court of jurisdiction to enter Judgment on Defendant's plea to Class D Trafficking in Cocaine.
 

 *549
 

 Standard of Review
 

 "When considering rulings on motions for appropriate relief, we review the trial court's order to determine 'whether the findings of fact are supported by evidence, whether the findings of fact support the conclusions of law, and whether the conclusions of law support the order entered by the trial court.' "
 
 State v. Frogge
 
 ,
 
 359 N.C. 228
 
 , 240,
 
 607 S.E.2d 627
 
 , 634 (2005) (quoting
 
 State v. Stevens
 
 ,
 
 305 N.C. 712
 
 , 720,
 
 291 S.E.2d 585
 
 , 591 (1982) ). "Conclusions of law are reviewed de novo and are subject to full review."
 
 State v. Biber,
 

 365 N.C. 162
 
 , 168,
 
 712 S.E.2d 874
 
 , 878 (2011) (citations omitted). This Court has stated, "If the issues raised by Defendant's challenge to [the trial court's] decision to deny his [MAR] are primarily legal rather than factual in nature, we will essentially use a
 
 de novo
 
 standard of review in evaluating Defendant's challenges to [the court's] order."
 
 State v. Jackson
 
 ,
 
 220 N.C. App. 1
 
 , 8,
 
 727 S.E.2d 322
 
 , 329 (2012) (first and third alteration in original) (citation and quotation marks omitted).
 

 Here, Defendant challenges the trial court's MAR Order on legal rather than factual grounds, asserting that N.C. Gen. Stat. § 15A-1331.2 divested the trial court of jurisdiction to enter Judgment on Defendant's plea to Class D Trafficking in Cocaine.
 
 See, e.g.
 
 ,
 
 State v. Hayes
 
 , --- N.C. App. ----, ----,
 
 788 S.E.2d 651
 
 , 652 (2016) ("Issues of statutory construction are questions of law which we review
 
 de novo
 
 on appeal[.]" (citation omitted));
 
 Powers v. Wagner
 
 ,
 
 213 N.C. App. 353
 
 , 357,
 
 716 S.E.2d 354
 
 , 357 (2011) ("This Court's determination of whether a trial court has subject matter jurisdiction is a question of law that is reviewed on appeal
 
 de novo
 
 ." (citation and quotation marks omitted)). Therefore, we employ a
 
 de novo
 
 review.
 

 Analysis
 

 A. Background Law on PJCs
 

 "Once a guilty plea is accepted in a criminal case, a trial court may continue the case to a subsequent date for sentencing."
 
 State v. Watkins
 
 ,
 
 229 N.C. App. 628
 
 , 631,
 
 747 S.E.2d 907
 
 , 910 (2013) (citing
 
 State v. Absher
 
 ,
 
 335 N.C. 155
 
 , 156,
 
 436 S.E.2d 365
 
 , 366 (1993) );
 
 see also
 
 N.C. Gen. Stat. § 15A-1334(a) (2017) (allowing "continuance of the sentencing hearing");
 

 id.
 

 § 15A-1416(b)(1) (2017) (allowing the State to move for imposition of sentence when prayer for judgment has been continued). "This continuance is frequently referred to as a 'prayer for judgment continued' ... [and] vests a trial judge presiding at a subsequent session of court with the
 
 jurisdiction
 
 to sentence a defendant for crimes
 
 *550
 
 previously adjudicated."
 
 *693
 

 State v. Degree
 
 ,
 
 110 N.C. App. 638
 
 , 640-41,
 
 430 S.E.2d 491
 
 , 493 (1993) (emphasis added);
 
 see also
 

 Miller v. Aderhold
 
 ,
 
 288 U.S. 206
 
 , 211,
 
 53 S.Ct. 325
 
 , 326,
 
 77 L.Ed. 702
 
 , 705-06 (1933) ("[W]here verdict has been duly returned, the jurisdiction of the trial court ... is not exhausted until sentence is pronounced, either at the same or a succeeding term." (citations omitted)).
 

 Under our common law, a PJC may be for a definite or indefinite period of time, as long as it is entered "within a reasonable time"; otherwise, the trial court loses jurisdiction.
 
 Degree
 
 ,
 
 110 N.C. App. at 641
 
 ,
 
 430 S.E.2d at 493
 
 (citation and quotation marks omitted). Our Supreme Court has clarified that "[a]s long as a prayer for judgment is not continued for an unreasonable period, ... and the defendant was not prejudiced, ... the court does not lose the jurisdiction to impose a sentence."
 
 Absher
 
 ,
 
 335 N.C. at 156
 
 ,
 
 436 S.E.2d at 366
 
 (citations omitted). "Deciding whether sentence has been entered within a 'reasonable time' requires consideration of the reason for the delay, the length of the delay, whether defendant has consented to the delay, and any actual prejudice to defendant which results from the delay."
 
 Degree
 
 ,
 
 110 N.C. App. at 641
 
 ,
 
 430 S.E.2d at 493
 
 (citation omitted);
 
 see also
 

 State v. Lea
 
 ,
 
 156 N.C. App. 178
 
 , 180,
 
 576 S.E.2d 131
 
 , 133 (2003) (upholding as reasonable a sentence entered over five years after defendant was convicted).
 

 B. N.C. Gen. Stat. § 15A-1331.2
 

 In 2012, the Legislature enacted N.C. Gen. Stat. § 15A-1331.2, titled "Prayer for Judgment Continued for a Period of Time that Exceeds 12 Months Is an Improper Disposition of a Class B1, B2, C, D, or E Felony," which provides:
 

 The court shall not dispose of any criminal action that is a Class B1, B2, C, D, or E felony by ordering a prayer for judgment continued that exceeds 12 months. If the court orders a prayer for judgment continued in any criminal action that is a Class B1, B2, C, D, or E felony, the court shall include as a condition that the State shall pray judgment within a specific period of time not to exceed 12 months. At the time the State prays judgment, or 12 months from the date of the prayer for judgment continued order, whichever is earlier, the court shall enter a final judgment unless the court finds that it is in the interest of justice to continue the order for prayer for judgment continued. If the court continues the order for prayer for judgment continued, the order shall be continued for a specific period
 
 *551
 
 of time not to exceed 12 months. The court shall not continue a prayer for judgment continued order for more than one additional 12-month period.
 

 N.C. Gen. Stat. § 15A-1331.2 (2017). Whether, and to what extent, N.C. Gen. Stat. § 15A-1331.2 imposes stricter jurisdictional requirements on a trial court for these high-level felonies than at common law presents a question of first impression for this Court.
 
 [2]
 

 Here, Defendant's plea to a Class D felony and the trial court's 27 February 2017 Judgment unquestionably failed to comply with the requirements of N.C. Gen. Stat. § 15A-1331.2, which provides that if a trial court orders a PJC for a Class D felony, the trial court must include a condition that the State pray for judgment "within a specific period of time not to exceed 12 months."
 
 See
 
 N.C. Gen. Stat. § 15A-1331.2. Here, Defendant's plea agreement contained no such provision. Approximately 19 months after Defendant's conviction, the State prayed for judgment, and Defendant's Judgment was entered. No further order was entered during this 19-month time period continuing the case for up to the additional 12 months under the statute. As a result, the ultimate issue presented for our consideration in this case is whether the fact that Defendant's PJC failed to comply with the time-limit requirements set out in N.C. Gen. Stat. § 15A-1331.2 deprived the trial court of jurisdiction to enter Judgment against Defendant.
 

 *694
 
 It is axiomatic that "[w]here jurisdiction is statutory and the Legislature requires the Court to exercise its jurisdiction in a certain manner, to follow a certain procedure, or otherwise subjects the Court to certain limitations, an act of the Court beyond these limits is in excess of its jurisdiction."
 
 In re T.R.P.
 
 ,
 
 360 N.C. 588
 
 , 590,
 
 636 S.E.2d 787
 
 , 790 (2006) (citation and quotation marks omitted). "The extent, if any, to which a particular statutory provision creates a jurisdictional requirement hinges upon the meaning of the relevant statutory provisions."
 
 State v. Brice
 
 ,
 
 370 N.C. 244
 
 , 251,
 
 806 S.E.2d 32
 
 , 37 (2017) (citation omitted).
 

 Under North Carolina law, "[t]he primary rule of construction of a statute is to ascertain the intent of the legislature and to carry out such intention to the fullest extent."
 
 Burgess v. Your House of Raleigh
 
 ,
 
 326 N.C. 205
 
 , 209,
 
 388 S.E.2d 134
 
 , 137 (1990) (citation omitted). "The best
 
 *552
 
 indicia of [the legislative] intent are the language of the statute ..., the spirit of the act[,] and what the act seeks to accomplish."
 
 Concrete Co. v. Board of Commissioners
 
 ,
 
 299 N.C. 620
 
 , 629,
 
 265 S.E.2d 379
 
 , 385 (1980) (citation omitted).
 

 If the language of a statute is free from ambiguity and expresses a single, definite, and sensible meaning, judicial interpretation is unnecessary and the plain meaning of the statute controls. Conversely, where a literal interpretation of the language of a statute will lead to absurd results, or contravene the manifest purpose of the Legislature, as otherwise expressed, the reason and purpose of the law shall control and the strict letter thereof shall be disregarded.
 

 Mazda Motors v. Southwestern Motors
 
 ,
 
 296 N.C. 357
 
 , 361,
 
 250 S.E.2d 250
 
 , 253 (1979) (citations and quotation marks omitted). Although we generally construe criminal statutes against the State, "[a] criminal statute is still construed utilizing 'common sense' and legislative intent."
 
 State v. Beck
 
 ,
 
 359 N.C. 611
 
 , 614,
 
 614 S.E.2d 274
 
 , 277 (2005) (quoting
 
 State v. Jones
 
 ,
 
 358 N.C. 473
 
 , 478,
 
 598 S.E.2d 125
 
 , 128 (2004) );
 
 see also
 

 Darby v. Darby
 
 ,
 
 135 N.C. App. 627
 
 , 628,
 
 521 S.E.2d 741
 
 , 742 (1999) ("[T]he courts in reading our statutes must import common sense to the meaning of the legislature's words to avoid an absurdity." (citation omitted)).
 

 We acknowledge the language of N.C. Gen. Stat. § 15A-1331.2 is unambiguous in prohibiting a trial court from entering an indefinite PJC for these high-level crimes. However, nothing in Section 15A-1331.2 suggests its provisions should be construed as jurisdictional in nature. On its face, the statute in question fails to mention jurisdiction or any consequences for not adhering to its directives. We therefore must look to the Legislature's intent in enacting this statute to determine whether noncompliance strips the trial court of jurisdiction to enter final judgment.
 
 See
 

 Brice
 
 ,
 
 370 N.C. at 251
 
 ,
 
 806 S.E.2d at 37
 
 .
 

 After reviewing the legislative history of this statute, which we acknowledge is scant, it is apparent that the purpose of Section 15A-1331.2 is to ensure those charged with the highest level offenses under our statutes do not escape punishment by receiving an indefinite PJC.
 
 [3]
 

 *553
 
 By only limiting
 
 *695
 
 the trial court's ability to enter indefinite PJCs in the most serious offenses, the Legislature evinces an intent to expedite entry of final judgment for high-level crimes and guarantee that defendants convicted of these high-level crimes do not avoid sentencing for extended periods of time, which was and still is possible for defendants convicted of less serious offenses.
 
 See, e.g.
 
 ,
 
 State v. Pelley
 
 ,
 
 221 N.C. 487
 
 , 496-98,
 
 20 S.E.2d 850
 
 , 856-57 (1942) (upholding a delay of almost seven years between PJC and entry of final judgment).
 

 Defendant contends a violation of Section 15A-1331.2 relinquishes the trial court of jurisdiction under the plain language of the statute, which used mandatory language. However, although the provisions of this statute are couched in mandatory terms, that fact, standing alone, does not make them jurisdictional in nature.
 
 See, e.g.
 
 ,
 
 State v. House
 
 ,
 
 295 N.C. 189
 
 , 203,
 
 244 S.E.2d 654
 
 , 662 (1978) (stating the words "must" or "shall" in a statute does not always "indicate a legislative intent to make a provision of the statute mandatory[ ] and a failure to observe it fatal to the validity of the purported action").
 
 [4]
 

 *554
 
 The effect of adopting the construction of N.C. Gen. Stat. § 15A-1331.2 espoused by Defendant, which would prohibit a trial court from entering judgment on an indefinite PJC after 12 months (or 24 months if either party obtains an extension) for our State's most serious offenses, cannot be squared with the likely legislative intent motivating the enactment of this statutory provision.
 
 See
 

 Mazda Motors
 
 ,
 
 296 N.C. at 361
 
 ,
 
 250 S.E.2d at 253
 
 (holding where an interpretation of a statute would "contravene the manifest purpose of the Legislature, ... the reason and purpose of the law shall control" (citations omitted)). As previously discussed, it is apparent our Legislature never intended that a violation of Section 15A-1331.2 would strip the trial court of jurisdiction to enter judgment on these high-level offenses. Because the intent of the Legislature controls, we hold that noncompliance with N.C. Gen. Stat. § 15A-1331.2 does not automatically divest the trial court of jurisdiction to enter a final judgment.
 
 See
 
 id.
 

 Rather, whether the trial court retained jurisdiction must be assessed using the standards set out in
 
 Absher
 
 and
 
 Degree
 
 .
 

 Applying these principles, we hold the trial court's delay in sentencing Defendant was not unreasonable nor was Defendant prejudiced by this delay. First, the Record shows, and Defendant concedes, that Defendant did not object to the trial court's PJC entered upon Defendant's
 
 Alford
 
 plea, and thereafter Defendant never requested the trial court enter judgment on his conviction. His failure to do either is "tantamount to his consent to a continuation of" judgment during that time period.
 
 Degree
 
 ,
 
 110 N.C. App. at 641-42
 
 ,
 
 430 S.E.2d at 493
 
 . Secondly, the length of Defendant's delay, approximately 19 months, is well within the range of delays previously upheld by our courts.
 
 See
 

 Pelley
 
 ,
 
 221 N.C. at 496-98
 
 ,
 
 20 S.E.2d at 856-57
 
 (approximately seven-year delay upheld);
 
 see also
 

 Lea
 
 ,
 
 156 N.C. App. at 180
 
 ,
 
 576 S.E.2d at 133
 
 (five-year delay upheld);
 
 State v. Mahaley
 
 ,
 
 122 N.C. App. 490
 
 , 491-93,
 
 470 S.E.2d 549
 
 , 550-52 (1996) (four-year, six-month
 
 *696
 
 delay upheld).
 
 [5]
 

 Lastly, Defendant suffered no prejudice as a result of this delay. The purpose for Defendant's PJC was to allow Defendant time to provide
 
 *555
 
 substantial assistance to the State in accordance with his plea agreement. Because of this delay in sentencing, Defendant was able to provide substantial assistance, and as a result, Defendant received a significantly lower sentence than he would have had he not been able to provide assistance to the State. Further, Defendant does not argue he was prejudiced in any way by the trial court's failure to enter judgment within 12 months.
 

 Accordingly, we hold that the Judgment was entered within a reasonable period of time and that Defendant suffered no actual prejudice thereby. Because the trial court did not lose jurisdiction to enter Judgment against Defendant, the trial court correctly denied Defendant's MAR.
 

 Conclusion
 

 For the foregoing reasons, we conclude the trial court retained jurisdiction to enter Judgment on 27 February 2017. Therefore, we affirm the trial court's MAR Order.
 

 AFFIRMED.
 

 Judges ZACHARY and BERGER concur.
 

 [1]
 

 N.C. Gen. Stat. § 90-95
 
 (h)(5) authorizes a trial court to deviate from the mandatory sentencing guidelines under Section 90-95 if the trial court finds the defendant provided the State with "substantial assistance in the identification, arrest, or conviction of any accomplices, accessories, co-conspirators, or principals[.]"
 
 N.C. Gen. Stat. § 90-95
 
 (h)(5) (2017).
 

 [2]
 

 Watkins
 
 represents the only published opinion from either of our appellate courts that mentions the statute in question; however, we did not address this statute's impact on our previous case law.
 
 229 N.C. App. at
 
 631 n.2,
 
 747 S.E.2d at
 
 910 n.2 ("[W]e do not reach the issue of how this statute affects the rules laid out in
 
 Degree
 
 and
 
 Absher
 
 as the statute [is inapplicable in this case].").
 

 [3]
 

 The Bill creating this statute originated in the House of Representatives and read as follows:
 

 The court shall not dispose of any criminal action that is a Class B, C, D, or E felony by ordering a prayer for judgment continued that exceeds 12 months. If the court orders a prayer for judgment continued in any criminal action that is a Class B, C, D, or E felony, the court shall include as a condition that the State shall pray judgment within a specific period of time, not to exceed 12 months, and the court shall enter a final judgment at the time the State prays judgment or 12 months from the date of the prayer for judgment continued order, whichever is earlier.
 

 H.R. 852, 2011 Gen. Assemb., Reg. Sess. (N.C. Apr. 6, 2011) (originally proposed bill). After passing a first reading in the House, this Bill was referred to the House Committee on Judiciary Subcommittee B, where it was amended to its current version.
 
 See
 
 H.R. 852, 2011 Gen. Assemb., Reg. Sess. (N.C. Apr. 27, 2011) (edition 2). The Minutes from this Subcommittee shed little light on the discussions regarding the changes to this Bill.
 
 See Minutes of H. Comm. on Judiciary Subcomm. B
 
 , 2011 Gen. Assemb., Reg. Sess. (N.C. Apr. 26, 2011).
 

 When this Bill was read for the second time in the House, the sponsor of the Bill, Rep. Timothy Spear, and three other Representatives spoke in support of it, describing it as an attempt to ensure that a PJC is not a final disposition in these high-level felony cases and to be "tougher on crime."
 
 See
 
 House Audio Archives, 2011 Gen. Assemb., Reg. Sess. (Apr. 28, 2011), https://www.ncleg.gov/DocumentSites/HouseDocuments/2011-2012% 20Session/Audio% 20Archives/2011/04-28-2011.mp3 (remarks by Reps. Guice, Spear, Engle, and Faircloth at 3:59:00 to 4:05:00). These brief remarks constitute the only substantive discussions of this Bill. Eventually, the exact language of this Bill was placed in Senate Bill 707, which became law in 2012.
 
 See
 
 School Violence Prevention Act of 2012, 2012 N.C. Sess. Law 149, § 11 (N.C. 2012);
 
 see also
 
 2012 N.C. Sess. Law 194, § 45.(e) (N.C. 2012) (recodifying Section 11 of Session Law 149 as N.C. Gen. Stat. § 15A-1331.2 ).
 

 [4]
 

 Our view of Section 15A-1331.2 is analogous to the treatment of N.C. Gen. Stat. § 7B-1109(e), which provides strict timelines for entry of orders in termination of parental rights proceedings.
 
 See
 
 N.C. Gen. Stat. § 7B-1109(e) (2017). This Court has recognized the failure to enter an order within the statutory timelines does not automatically result in the order being vacated.
 
 See
 

 In re J.L.K.
 
 ,
 
 165 N.C. App. 311
 
 , 316,
 
 598 S.E.2d 387
 
 , 391 (2004). Our Supreme Court has further held the remedy to enforce these statutory timelines is through
 
 mandamus
 
 .
 
 In re T.H.T.
 
 ,
 
 362 N.C. 446
 
 , 455,
 
 665 S.E.2d 54
 
 , 60 (2008) ("In cases such as the present one in which the trial court fails to adhere to statutory time lines, mandamus is an appropriate and more timely alternative than an appeal.").
 

 [5]
 

 We further note had (1) Defendant's plea agreement included a condition that the State pray for judgment within a specific period of time not to exceed 12 months and (2) the State moved for an additional 12-month continuance within the first 12-month period, the 19-month period in this case would have complied with the statutory requirements of Section 15A-1331.2.
 
 See
 
 N.C. Gen. Stat. § 15A-1331.2.