IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA22-672

Filed 01 August 2023

Robeson County, No. 11 CRS 711839

STATE OF NORTH CAROLINA

v.

KENNETH MARTIN MCDONALD, Defendant.

Appeal by Defendant from judgment entered 3 February 2022 by Judge Tiffany Peguise-Powers in Robeson County Superior Court. Heard in the Court of Appeals 22 March 2023.

*Attorney General Joshua H. Stein, by Assistant Attorney General Michael T. Henry, for the State.*

*Patterson Harkavy LLP, by Narendra K. Ghosh and Paul E. Smith, for Defendant.*

GRIFFIN, Judge.

Defendant Kenneth Martin McDonald pled guilty to misdemeanor death by motor vehicle and the trial court continued judgment. Years later, the State prayed judgment on that conviction and the motion was allowed by the trial court. Defendant appeals from that judgment. Defendant contends the trial court erred in entering judgment because (1) the prayer for judgment continued ("PJC") was intended to be a final judgment and (2) the nearly seven-year delay in entering judgment was unreasonable. We affirm.

## I.    Factual and Procedural Background

This case arises from a vehicular collision between Defendant's vehicle and a motorcycle, resulting in the death of the motorcycle driver. The evidence at trial tended to show as follows:

On 6 October 2011, Defendant was preparing to make a left turn when he stopped his vehicle about three feet over the center yellow lines and into the neighboring lane. Ricky Oldfield was traveling on a motorcycle in the left, oncoming lane toward Defendant at that time. Oldfield saw Defendant stop in front of him and attempted to stop his motorcycle by engaging the brakes and sliding. Oldfield was unable to stop and collided with Defendant's vehicle. Oldfield hit his head on the front bumper of Defendant's car and died as a result of the accident.

Defendant was charged with misdemeanor death by motor vehicle. Defendant pled not guilty and his case came on for trial in April 2012 in Robeson County District Court. On 25 April 2012, Defendant was found guilty of misdemeanor death by vehicle and the District Court imposed a suspended sentence of twelve months of probation. Defendant appealed to superior court.

On 28 October 2014, Defendant pled guilty to the charge of misdemeanor death by vehicle in Robeson County Superior Court. Defendant's plea agreement stated that, as conditions for the acceptance of his plea, "Defendant shall plead guilty" and "Defendant shall acknowledge responsibility in open court." The agreement further stated that the trial court would "then enter a Prayer for Judgment in this matter."

The trial court proceeded to sentencing following Defendant's plea. During sentencing, Defendant issued an apology to the court and to Oldfield's family. After hearing from Defendant and Oldfield's family, the trial court concluded the hearing with the following remarks:

> Pursuant to the transcript of plea, judgment's continued in this matter upon payment of the costs.
>
> I hope that both sides can have some peace and resolution in this matter.
>
>  . . .
>
> I wish both sides every good fortune.

The trial court then entered a written order "that prayer for judgment be continued from day to day, week to week, term to term until further motion of the state, upon payment of cost."

On 14 August 2020, nearly six years later, the State filed a motion to calendar and pray judgment after Defendant was charged with involuntary manslaughter in connection with another motor vehicle accident. On 25 September 2020, Defendant filed a motion in opposition. On 3 February 2022, the trial court filed a written judgment granting the State's motion to pray judgment and entering judgment on Defendant's 2014 conviction, sentencing Defendant to 150 days' imprisonment, suspended for twelve months of supervised probation. Defendant appeals.

## II.    Analysis

Defendant contends the trial court erred in allowing the State's prayer for judgment and entering judgment on his 2014 conviction because (1) the court intended for his PJC to be a final judgment and (2) it was unreasonable to delay entry of judgment until nearly seven years after Defendant's conviction.

## A. Jurisdiction

Defendant acknowledges he has no right to appeal from the entry of judgment upon his guilty plea. Accordingly, Defendant asks this Court to grant his petition for a writ of certiorari pursuant to N.C. Gen. Stat. § 15A-1444(e). *See* N.C. Gen. Stat. § 15A-1444(e) (2021) (stating a defendant who pleads guilty and thus has no right to appeal "may petition the appellate division for review by writ of certiorari"). We exercise our discretionary authority and grant review. *See State v. Posner*, 277 N.C. App. 117, 120, 857 S.E.2d 870, 872 (2021).

## B. The PJC was not a Final Judgment

Defendant first argues the trial court erred in entering judgment in 2022 because the "2014 [PJC] was meant to be final." This Court reviews the issue of whether a PJC constitutes a final judgment *de novo*. *See State v. Popp,* 197 N.C. App. 226, 228, 676 S.E.2d 613, 614 (2009).

"A trial court has the inherent power to designate the manner by which its judgments shall be executed." *State v. Lea*, 156 N.C. App. 178, 180, 576 S.E.2d 131, 132 (2003). "For example, a court is authorized to continue a case to a subsequent date for sentencing." *Id*. "This continuance is frequently referred to as a '[PJC]' and

vests a trial judge presiding at a subsequent session of court with the jurisdiction to sentence a defendant for crimes previously adjudicated." *Id.* "When, however, the trial judge imposes conditions 'amounting to punishment' on the continuation of the entry of [the] judgment, the judgment loses its character as a PJC and becomes a final judgment." *State v. Brown*, 110 N.C. App. 658, 659, 430 S.E.2d 433, 434 (1993) (citation omitted). We have held that fines and imprisonment terms constitute conditions "amounting to punishment," and transforming a PJC into a final judgment, while conditions requiring a defendant to "obey the law" and pay court costs do not cause such a change. *Id.*; *State v. Absher*, 335 N.C. 155, 157, 436 S.E.2d 365, 366 (1993) ("In this state, we have made a distinction between cases in which prayer for judgment is continued with conditions imposed and cases in which prayer for judgment is continued without any conditions.").

Defendant argues his PJC became a final judgment by operation of law because the trial court included a condition amounting to punishment. Specifically, Defendant's argument turns upon the fact that his PJC was allowed only after he "acknowledge[d] responsibility in open court" by an oral apology, as outlined in his plea agreement.

Defendant relies on this Court's decision in *State v. Popp* to support his contention. In *Popp,* the defendant agreed to plead guilty to certain crimes charged upon the condition that the State would dismiss other charges. The trial court then continued judgment on the defendant's conviction, but also ordered him to "abide by

a curfew, complete high school, enroll in an institution of higher learning or join the armed forces, cooperate with random drug testing, complete 100 hours of community service, remain employed, and write a letter of apology." *Popp*, 197 N.C. App. at 228, 676 S.E.2d at 615. On appeal, our Court held that the defendant had been "ordered to complete a number of conditions which [were] beyond a requirement to obey the law," and his PJC therefore "lost its character as a PJC and was transformed into a final judgment." *Id.* at 228, 676 S.E.2d at 615. In the similar case of *State v. Brown*, our Court found the defendant was required to do more than obey the law when he was ordered to continue mental health treatment in the future. *Brown*, 110 N.C. App. at 659, 430 S.E.2d at 434. Notably, the defendants in *Popp* and *Brown* were ordered to take actions following the grant of their PJCs which would require further court supervision or monitoring by the State.

Defendant's case is distinguishable from both *Popp* and *Brown*. In *Popp* and *Brown*, the defendants' PJCs were predicated on additional conditions which were to be completed after entry of the PJC. In the present case, Defendant was asked to follow through on his promise to issue an oral apology, after he had formally admitted responsibility in his plea agreement. Indeed, Defendant concedes in his brief on appeal that "[r]equiring [Defendant] to make an apology was . . . part of the 'terms and conditions' of the plea agreement"—terms which included that Defendant would receive a PJC. The language of Defendant's plea agreement shows that he signed the

plea upon consideration that he would receive a PJC. He cannot now claim that the State's reciprocal terms were an improper condition on that subsequent PJC.

Once the PJC was granted, Defendant was free of additional requirements; other than the general requirement to obey the law. The State prayed for judgment in this case only after Defendant was charged with a separate, but similar, crime. Defendant was not ordered to complete any condition that amounted to punishment transforming his PJC into a final judgment.

Defendant further argues the trial court intended the judgment to be final because the trial judge stated in open court that he hoped "both sides can have some peace and resolution in the matter" following entry of Defendant's PJC. Defendant's brief cites no authority in support of this argument. Rule 28(b)(6) of the North Carolina Rules of Appellate Procedure requires that, in an appellant's brief on appeal, "[t]he body of the argument and the statement of applicable standard(s) of review shall contain citations of authorities upon which the appellant relies." N.C. R. App. P. 28(b)(6). Defendant cites no authority and his argument is therefore abandoned. *See Viar v. N.C. Dep't of Transp.*, 359 N.C. 400, 401–02, 610 S.E.2d 360, 361 (2005). Nonetheless, assuming that this issue is properly before us, we are not persuaded that the trial court's statement caused Defendant's PJC to become a final judgment. Our criminal justice system consents to the entry of PJCs with purposeful hope that further action by the courts will not be necessary, while understanding that the need for such action may arise. *See State v. Miller,* 225 N.C. 213, 215, 34 S.E.2d 143, 145

(1945) (discussing that PJCs give a defendant the opportunity to escape punishment altogether). The trial judge's statements following heartfelt presentations from Defendant and Oldfield's family were well-wishes for the future, not statements of binding legal effect.

We hold that Defendant's PJC was not a final judgment. We now turn to whether it was reasonable for the court to enter judgment on Defendant's 2014 conviction in 2022.

## C. The Trial Court's Delay was Not Unreasonable

Defendant argues the trial court erred in entering judgment because "the delay in the State's prayer for judgment was unreasonable." This Court reviews the issue of whether the delay between a PJC and the entry of judgment on the continued conviction was unreasonable *de novo*. *State v. Degree,* 110 N.C. App. 638, 641, 430 S.E.2d 491, 493 (1993).

A continuance resulting from a PJC "may be for a definite or indefinite period of time, but in any event the sentence must be entered 'within a reasonable time' after the conviction." *Id.* The State is authorized, pursuant to N.C. Gen. Stat. § 15A-1416(b)(1), to motion for prayer for judgment "[a]t any time after verdict." *Id.*; N.C. Gen. Stat. § 15A-1416(b)(1) (2021). Nonetheless, "the State's failure to do so within a reasonable time divests the trial court of jurisdiction to grant the motion." *Id.* "'Deciding whether sentence has been entered within a 'reasonable time' requires consideration of [1] the reason for delay, [2] the length of delay, [3] whether defendant

has consented to the delay, and [4] any actual prejudice to [the] defendant which results from the delay.'" *State v. Marino*, 265 N.C. App. 546, 550, 828 S.E.2d 689, 693 (2019) (citation omitted); *see Absher*, 335 N.C. at 156, 436 S.E.2d at 366 ("As long as a prayer for judgment is not continued for an unreasonable period . . . and the defendant was not prejudiced . . . , the court does not lose the jurisdiction to impose a sentence.").

In this case, Defendant's judgment was entered almost seven years after judgment on Defendant's conviction was continued. Based upon the circumstances of this particular case, we hold that this delay was not unreasonable.

The State delayed its motion to pray judgment because it had no reason to do so before Defendant was charged with another motor vehicle offense. The delay was not caused by the State's negligence or failure to otherwise timely pray for judgment, and judgment was not continued for a definite period of time shorter than seven years. *See State v. Pelley*, 221 N.C. 487, 20 S.E.2d 850, 857 (1942) (finding no error in entry of judgment after seven-year delay, while conceding that jurisdiction would have been lost if court had failed to seek custody of the defendant prior to the prescribed five-year fixed continuance term); *Degree*, 110 N.C. App. at 641, 430 S.E.2d at 493 (affirming entry of continued judgment where "[t]he record [did] not reveal any improper purpose for the delay in sentencing"). Rather, Defendant was charged with a similar crime and the State motioned to calendar and pray judgment soon thereafter, even before Defendant's trial on the new charge. The length of the delay

in this case mirrors that of the longest delay this Court has previously found acceptable, *see Pelley*, 221 N.C. 487, 20 S.E.2d at 857, and, in light of Defendant's additional, similar charges, we see no reason to reach a different result.

Whatever weight we would give to the somewhat novel length of delay in this case is diminished by Defendant's consent to the delay. This Court has consistently held that, where a defendant does not initially object to PJC and does not thereafter ask for judgment to be entered, his actions are "tantamount to consent." *See Lea*, 156 N.C. App. at 182, 576 S.E.2d at 131 (holding the defendant's actions were "'tantamount to his consent'" where "the record [did] not show that [the] defendant [] objected to the continuation of the prayer for judgment or that he ever requested that the trial court enter judgment" (citation omitted)); *Degree*, 110 N.C. App. at 641–42, 430 S.E.2d at 493 (holding the defendant's failure to request "judgment be pronounced" prior to a particular date, even where that date was definitely prescribed, was "tantamount to his consent to a continuation of the sentencing hearing beyond that date"). Most notably, in *State v. Marino*, this Court affirmed entry of a continued judgment where the defendant "did not object to the trial court's PJC entered upon [the defendant's guilty] plea, and thereafter [the defendant] never requested the trial court enter judgment on his conviction." *Marino*, 265 N.C. App. at 554, 828 S.E.2d at 695. The defendant's "failure to do either [was] 'tantamount to his consent to a continuation of judgment during that time period." *Id.* (citation omitted).

This factor routinely supports the reasonableness of a delayed entry of judgment, except in rare cases where the defendant does request that his judgment be entered at an earlier time and the State fails to timely comply. We note a majority of our cases, which treat a defendant's failure to request entry of judgment as consent, involve either actions by the defendant which may materially and beneficially affect the defendant's sentencing; a definite, prescribed period of continuation; or both. *See, e.g., id.* (affirming where purpose of delay was to allow the defendant to provide "substantial assistance" to the State and receive a lower sentence as a result); *Degree*, 110 N.C. App. at 641–42, 430 S.E.2d at 493 (affirming where the defendant did not request entry of judgment on or before the prescribed date when his definite continuance period was to end). However, our Courts have never found either of these factual circumstances to be required for a defendant's failure to request entry of judgment to constitute consent. Rather, they are relevant facts to consider when weighing the reasonableness of the State's delay. Here, Defendant did not prolong the State's ability to pray judgment at an earlier time, nor was his judgment continued for a definite time. We cannot say that these circumstances negate the benefit Defendant received by allowing his judgment to remain continued for nearly seven years.

Indeed, "there is a presumption that the [PJC] was made with the defendant's consent, if not at his request . . . , as an act of mercy to him, so that he might qualify himself by his good behavior to receive further clemency from the court, and thus

avoid the rigor of the law." *State v. Everitt*, 164 N.C. 399, 79 S.E. 274, 276 (1913). Defendant's actions here were substantially similar to the defendant's conduct in *Marino*, and we reach the same result.

Lastly, Defendant cannot show actual prejudice due to the delay. Defendant argues that he has been prejudiced because the State destroyed all criminal discovery associated with this case before March 2020, thus frustrating the court's ability to appropriately review the evidence during sentencing. However, Defendant pled guilty to the underlying conviction and stipulated to the factual basis supporting the guilty plea. There is nothing in the record that indicates Defendant was denied discovery when he knowingly and voluntarily pled guilty in superior court. He had the benefit of a trial in district court and any access afforded him in the superior court prosecution. Based upon the stipulated facts and Defendant's prior record level as of 2014, Defendant received a sentence of 150 days, suspended for a term of twelve months of supervised probation. Defendant cannot show that the outcome would have differed had the State not destroyed its discovery in this case.

The Dissent presents a number of points to be considered in weighing the factors for reasonableness in this case. We disagree, though, that these considerations are both proper for this Court at this time and practically beneficial advice for the effective administration of justice through PJCs. The present case lacks factual circumstances that speak to why Defendant received a PJC or why he never chose to pray judgment on his conviction. However, the record does show that

if Defendant desired to avoid punishment for his 2014 conviction altogether, he simply needed to follow the law and not commit a similar offense. If circumstances arose, whatever they may be, such that Defendant deemed it favorable for him to request entry of judgment, he was free to do so. This happens routinely with Chapter 20 motor vehicle violations. Regardless of how or for what reason Defendant would do so, the record here shows that he never did request entry of judgment. That failure to request is tantamount to consent.

The Dissent insists that the practical effects of our decision will dissuade attorneys and defendants alike from employing PJCs in future cases, because a criminal defendant would never agree to a PJC without a definite, reasonable ending point to their potential liability. The Dissent's reasoning is flawed. PJCs are beneficial to the pursuit of justice under current law. The standard the Dissent attempts to create would dissuade all parties from considering a PJC as a potential resolution. Almost certainly, the Dissent's standard would create more work for the trial courts and give people charged with Chapter 20 motor vehicle violations fewer tools to restore their privilege to drive lawfully. In their current form, interpreted as we so hold, the State and a defendant may effectively negotiate PJCs, with the consent of the court. This discretion allows criminal defendants to avoid the consequences of their convictions indefinitely and gives the State a way to remain faithful to their oath as well.

### III. Conclusion

We hold that Defendant's 2014 PJC did not include conditions that converted it into a final judgment, and the nearly seven-year delay between the PJC and the subsequent entry of judgment was not unreasonable. We affirm the trial court's judgment.

AFFIRMED.

Judge FLOOD concurs.

Judge RIGGS dissents by separate opinion.

RIGGS, Judge, dissenting.

A prayer for judgment continued ("PJC") is a longstanding procedural tool that allows a judge to refrain from entering final judgment in a case, and this tool has been developed to allow judges to encourage efficient resolutions in their courtrooms, to promote rehabilitative resolutions in, most often, lower-level crimes, and to generally promote fairness in criminal judicial proceedings. *See* Dionne R. Gonder-Stanley, *Facing A Legislative Straight Jacket in the 21st Century: N. Carolina Courts & the Prayer for Judgment Continued*, 40 N.C. Cent. L. Rev. 32, 46 (2017). A PJC can be an act of judicial discretion which allows a defendant to satisfy his obligations in criminal court in exchange for abiding by stipulated conditions for a reasonable length of time. *State v. Miller*, 225 N.C. 213, 215-16, 34 S.E.2d 143, 145 (1945). But this Court and the North Carolina Supreme Court have been clear that where a PJC has been continued for an unreasonable length of time, the trial court will lose jurisdiction to enter final judgment.[1] This Court has held that the burden is on the State to establish jurisdiction to enter judgment. *State v. Watkins*, 229 N.C. App. 628, 634, 747 S.E.2d 907, 912 (2013) (citing *State v. Batdorf*, 293 N.C. 486, 493, 238

---

[1] It seems likely in this context that the term jurisdiction refers to the court's authority to enter a judgment rather than personal jurisdiction over the defendant or subject matter jurisdiction over the issue. *See, e.g., State v. Graham*, 225 N.C. 217, 219 34 S.E.2d 146, 147 (1945) (rejecting a defendant's argument that courts are "without *authority* to continue prayer for judgment and impose sentence at a subsequent term" on the basis that "courts of general jurisdiction . . . have the *power* to continue the case to a subsequent term for sentence" (emphasis added)).

S.E.2d 497, 502 (1977) (holding that jurisdiction is a matter which, "when contested, should be proven by the prosecution as a prerequisite to the authority of the court to enter judgment")).

In this case, the State did not meet its burden to establish jurisdiction in the hearing; the PJC was used without stipulated conditions or a definite timeline; and the entry of judgment was delayed more than *seventeen times* the maximum sentence for the underlying misdemeanor. Given that, I would hold that delay in entry of final judgment is unreasonable, and the trial court was divested of jurisdiction to enter judgment. Therefore, I respectfully dissent.

## I.    Analysis

The majority's analysis relies on cases that I believe are distinguishable. And, in extending the time before final entry of judgment, the majority's opinion introduces unintended consequences that will impede the ability of attorneys to give sound advice to their clients and of criminal defendants to make informed decisions. By approving the lengthy delay at issue in this case without any justifiable extenuating circumstances previously accepted under our precedents, the majority creates a legal landscape marked by uncertainty; a criminal defendant will not know what they must do to end their formal interaction with the criminal justice system, nor will they know when that relationship might reasonably come to an end. In fact, this uncertainty disincentives the settlement of cases with PJCs that can help to keep judicial workloads manageable.

To be clear, this Court has held that a PJC may be for a definite or indefinite period; however, the prayer for judgment may not be continued for an unreasonable period or the court will lose jurisdiction to enter judgment. *State v. Absher*, 335 N.C. 155, 156, 436 S.E.2d 365, 366 (1993); *see also State v. Lea*, 156 N.C. App. 178, 180, 576 S.E.2d 131, 132 (2003) ("The continuance may be for a definite or indefinite period of time, but, in any event, the sentence must be entered within a reasonable time after the conviction or plea of guilty."). The trial court can include conditions with the entry of a PJC, but not conditions that constitute punishment, at least not without converting that PJC to a final judgment. *State v. Popp*, 197 N.C. App. 226, 228, 676 S.E.2d 613, 614 (2009) (internal citations omitted). "Conditions 'amounting to punishment' include fines and imprisonment. Conditions not 'amounting to punishment' include 'requirements to obey the law,' and a requirement to pay the costs of court." *Id.* (quoting *State v. Brown*, 110 N.C. App. 658, 659, 430 S.E.2d 433, 434 (1993)).

While Mr. McDonald has argued that the PJC was, in essence, converted to final judgment on the date it was entered, I do not find that argument, standing alone, persuasive. Instead, I believe the determinative question presented is whether the delay in this case was so unreasonable such that it deprived the trial court of jurisdiction to entry final judgment seven years after the PJC was entered.

The perceived finality of the judgment is relevant in the analysis of the reasonableness of the length of the delay. To determine if the delay in entering

3

judgment is reasonable such that the trial court retains jurisdiction, this Court considers: (1) the reason for the delay; (2) the length of delay; (3) whether the defendant has consented to the delay; and (4) any actual prejudice which results from the delay. *State v. Degree*, 110 N.C. App. 638, 641, 430 S.E.2d 491, 493 (1993). These factors, when considered together, are both consistent with the public policy reasons behind the existence of PJCs and comport with due process guarantees. *See, e.g., Betterman v. Montana*, 578 U.S. 437, 439, 194 L. Ed. 2d 723, 727 (2016) (noting that an unreasonable delay before sentencing may raise due process concerns). It is axiomatic that all parties—the State and criminal defendants—must be able to understand the contours of judicial involvement in a criminal matter and when and how that criminal matter will come to an end. *See State v. Ward*, 46 N.C. App. 200, 205, 264 S.E.2d 737, 740 (1980) (noting the State's and criminal defendants' numerous interests in the timely resolution of criminal charges); *Teague v. Lane*, 489 U.S. 288, 309, 103 L. Ed. 2d 334, 355 (1989) ("[T]he principle of finality . . . is essential to the operation of our criminal justice system.").

In this case, I would find that each of the factors utilized in analyzing the reasonableness of the delay, individually and collectively, lend themselves to a conclusion that the delay here was unreasonable and the trial court did, in fact, lose jurisdiction. First, because the trial court did not identify the purpose of the prayer for judgment and there seemed to be good faith misunderstanding of the purpose, the unascertainable reason for the continuance cannot be used to justify a long delay;

second, the trial court did not provide Mr. McDonald with sufficiently definite instructions on how he might end the court's oversight such that he could make informed consent to the delay; third, the length of the delay significantly exceeds the boundaries, in analogous cases, previously approved by this Court for PJCs without predetermined timelines; and finally, the delay prejudiced Mr. McDonald.

### 1. *The Reason for the PJC was Unclear and the Parties Were Not of Accord on that Reasoning*

In this case, the reason for the delay in entry of the PJC does not support approving the delayed entry of judgment. The State argues that this was a conditional prayer for judgment that would continue *until* Mr. McDonald committing this or a similar crime. The problem with that argument is that it has no temporal bounds and inevitably runs afoul of this Court's rule that the PJC may not be used for an *unreasonable period*. *Degree*, 110 N.C. App. at 641, 430 S.E.2d at 493. Put another way, this reason is not compelling to justify the delay because it has no reasonable bounds – this motivation can be used forever to justify delay. A person could commit a similar crime 10 years, 20 years, or 50 years down the road. Thus, the State's justification has no logical end and does not justify delay where it could also be used and extended to violate our Court's rule that trial courts lose jurisdiction where there is an unreasonable delay before entry of final judgment. *Lea*, 156 N.C. App. at 180, 576 S.E.2d at 132.

Conversely, Mr. McDonald and the attorney who represented him in 2014 believed that this prayer for judgment was the final resolution of the case. That is, it seems that Defendant and his counsel did not believe that he was in a situation where he was engaged in this longstanding relationship with the court for years long oversight under the PJC. Therein lies the problem.

There are, of course, multiple reasons why a trial court or a defendant may want (or agree to) continued interactions with and supervision of a criminal defendant (and thus delay in entry of final judgment). *See State v. Johnson*, 169 N.C. 311, 311, 84 S.E. 767, 768 (1915) (affirming an order continuing a prayer for judgment "upon condition of good behavior" for three years); *see also State v. Hilton*, 151 N.C. 687, 692 65 S.E. 1011, 1014 (1909) (explaining that prayer for judgment can be used for defendant to return to court to show good faith in some promise of reformation or continued obedience to the law). Alternatively, a PJC may be intended to serve as a final disposition in lieu of sentencing. *See, e.g., Smith v. Gilchrist*, 749 F.3d 302, 305 n. 2, (4th Cir. 2014) (describing the use of PJC combined with driving school for efficient resolution of a moving traffic violation which benefits the court system by freeing up resources to handle other matters while allowing defendants to avoid increased insurance premiums). But where the intentions behind and intended effect of the PJC is unclear from the record, I would not hold that an unknown reason for the continuance can justify a delay this lengthy.

A recent trend in PJC statutes reaffirms the necessity for clarity in this area of the law. Our courts have used PJCs for over 100 years in all areas where sentencing is not mandated, with limited intercession by the General Assembly. *In re Greene*, 297 N.C. 305, 312, 255 S.E.2d 142, 147 (1979). In the 2011-12 session, the General Assembly passed legislation that expressly prohibited PJCs where the time before entry of judgment was continued more than a total of 12 months.[2] N.C. Gen. Stat. § 15A-1331.2 (2021). While this statute applies only to PJCs used in certain kinds of felony cases, it still indicates a legislative intent consistent with our courts' precedents, requiring some definition or limit to the terms for PJCs. During the discussion on this bill in the State House, Representatives discussed how the PJC was a valuable tool, but it requires clarity of scope to ensure it is used properly. House Audio Archives (28 Apr. 2011), https://www.ncleg.gov/Documents/9/1515 (remarks by Rep. Guice, Rep. Spear, Rep. Engle, and Rep. Faircloth at 3:39:00 - 4:03:00)

In sum, I believe the lack of clarity about the reason for the lengthy continuance—and the resulting confusion as to whether there even was an intended continuance rather than a final adjudication by PJC—in conjunction with the legislative trends to limit the time for entry of judgment after a PJC, counsel against holding that the delay in sentencing was reasonable.

---

[2] The statute allows the trial court to continue the PJC for up to one additional 12-month period if in the interest of justice. N.C. Gen. Stat. § 15A-1331.2

7

### 2. *The Defendant Did Not and Could Not Have Consented to a PJC Given the Indeterminate Length and Lack of Conditions Here*

In the majority's acknowledgment of the "somewhat novel length of delay" in this case, the majority downplays the significance of the delay by asserting that, in their opinion, Mr. McDonald consented to this delay. The majority points to *State v. Degree* for the proposition that Defendant's failure to request sentencing is "tantamount to consent." 110 N.C. App. at 641, 430 S.E.2d at 493. However, first, consent is "[a] voluntary yielding to what another proposes or desires; agreement, approval, or permission regarding some act or purpose." *Consent*, Black's Law Dictionary (11th ed. 2019). In *Degree,* the defendant agreed to a PJC for a fixed period of time of less than two weeks. 110 N.C. App. at 641, 430 S.E.2d at 493. That definite period of time provided the basis for agreement, or consent. Unlike in *Degree*, there was no end point in this case to which Mr. McDonald (or any criminal defendant) could knowingly agree. *Degree* does not mandate the outcome achieved by the majority: the rejection of any subsequent challenge to a delay in entry of judgment where a criminal defendant agrees to a PJC without a specific time period.

The majority's misreading of *Degree* and the outcome in this case would also create an unintended deterrence to the settlement of Chapter 20 or misdemeanor charges via a prayer for judgment. While our case law does not require that a prayer for judgment must have a definite time period, *Id.* at 641, 430 S.E.2d at 493, it is hard to fathom a criminal defendant agreeing to a prayer for judgment without a definite

8

ending point if this Court is effectively issuing a rule holding that agreeing to an indefinite prayer for judgment constitutes consent to entry of judgment even after a delay of more than half a decade. This could limit the ability of courts and prosecutors to bring needed resolution to families and to lessen their workloads.

A marked characteristic of cases where this Court has affirmed longer delays in entry of judgment after a PJC on the basis of consent is that they have either had a definite time period or specific conditions of the PJC – both of which create the basis for informed consent for the PJC and an actual basis for assessing the reasonableness of the delay. For example, in *State v. Marino*, the trial court agreed to grant a PJC in exchange for the defendant providing substantial assistance in the conviction of a co-conspirator. 265 N.C. App. 546, 554 n.5, 828 S.E.2d 689, 696 n.5 (2019). The PJC required the State to pray for judgment within twelve months of the conviction. *Id.* The State moved for entry of judgment after nineteen months and this Court affirmed that the delay was not unreasonable. *Id.* It follows, then, that the defendant in *Marino* had information both on the approximate time frame and conditions that were informing his consent. The same underlying logic applied to the smaller delay incurred in *Degree*. 110 N.C. App. at 641-42, 430 S.E.2d at 493 (holding the defendant's failure to request judgment after expiration of the time set for the PJC was "tantamount to his consent to a continuation of the sentencing hearing beyond that date" (citations omitted)).

9

Significantly, the majority does not discuss under what circumstance Mr. McDonald, like the defendants in *Marino* and *Degree*, would know that he needed to request an entry of judgment. Nor does it address how Mr. McDonald could act affirmatively to end his interaction with the criminal justice system and bring closure to his case. During the sentencing in 2014, the court asked Mr. McDonald if he understood that he would "receive a prayer for judgment continued in this matter[.]" However, the transcript does not include any discussion about what the prayer for judgment continued actually meant in the context of this case—*i.e.,* where there was not a definite endpoint for the PJC and no conditions were detailed.

Neither the court nor the General Assembly have defined a clear process for defendants to bring final closure to an indefinite-period PJC. The General Assembly authorized the State to move for appropriate relief to enter a final judgment where a PJC had been previously entered. N.C. Gen. Stat. § 15A-1416(b)(1) (2021). This statutory enforcement mechanism is designed to address situations where a defendant who has received a PJC has not satisfied the conditions imposed by the court in exchange for the PJC. *State v. Doss*, 268 N.C. App. 547, 551 n.4, 836 S.E.2d 856, 858 n.4 (2019). However, the General Assembly has not created any similar mechanism for a criminal defendant to end the coverage of an indefinite-period PJC. *Id*. *Doss* quite squarely highlights the problem with the majority's faulting Mr. McDonald for failure to request final judgement without a clear mechanism to do so. In *Doss*, this Court explained:

10

> Twenty years ago, in 1999, Defendant Jeffery Wade Doss was found guilty of assault on a female in Forsyth County District Court. The trial court entered a prayer for judgment continued (PJC) on that charge. Two years ago, in 2017, Defendant, now residing in West Virginia, was informed that he was ineligible for a concealed carry permit due to the 1999 matter. A year later, in 2018, Defendant moved the Forsyth County District Court to enter a final judgment on his 1999 matter, presumably so that he could (1) appeal the matter to superior court in hopes that the State would then be forced to dismiss the charge due to the staleness of the matter and (2) he could then regain his concealed carry permit in West Virginia.

*Id.* at 548, 836 S.E.2d at 856. The trial court denied that motion and the Court of Appeals held that because the PJC was not a final judgment, there was no mechanism for an appeal absent a petition for writ of certiorari. *Id.* at 550-51, 836 S.E.2d at 858. How can it be that a defendant is both without a path to force final judgment *and* deprived of his ability to complain of delayed final judgment because he did not force entry of final judgment.

Not only is Mr. McDonald similarly faced without a mechanism to force entry of a final judgment, the order itself, in this case, did not give this Defendant the option to bring final closure to the PJC; the order specifically stated that the prayer for judgment was continued "*until further motion of the State.*" (Emphasis added). The situation in this case was further complicated by the fact that Mr. McDonald's attorney thought the PJC was a final judgment.

For these reasons, I do not think Mr. McDonald consented in a knowing and informed way to the delay, and indeed, had no mechanism available to him to avoid

11

his "consent" being fatal to his appeal here. Analysis under this factor weighs in favor of concluding the delay was unreasonable.

### 3. *The Length of the Delay Was Unreasonable*

The majority here states that the length of delay in this case mirrors the longest delay this Court has found acceptable. However, in the cases relied upon by the majority, there were either multiple factors weighing in favor of the reasonableness of the delay or other extenuating circumstances. I do not think those cases mandate or even support the majority's outcome here.

Generally, where our courts have affirmed entry of judgment after a longer delay, the PJC had a predefined endpoint. *See, e.g., State v. Thompson*, 267 N.C. 653, 655-56, 148 S.E.2d 613, 615 (1966) (affirming entry of judgment and sentencing roughly two years into a three-year PJC). Where no duration is established by the trial court, lengthy delays in sentencing have been held to be reasonable, in some cases, because of intervening appeals on related charges by the defendant or to resolve some, but not all, of the criminal charges pending. For example, in *State v. Lea*, the trial court entered a PJC on the lesser charges because the defendant was serving a longer sentence on attempted second-degree murder charges. *State v. Lea*, 156 N.C. App. at 180, 576 S.E.2d at 133. The trial court entered judgment four years after the PJC was granted when the North Carolina Supreme Court decided that the crime of attempted second-degree murder did not exist in North Carolina. *Id.* This Court held the delay was not unreasonable because the defendant was serving time

on the other charges in the intervening four years. *Id.* In *State v. Van Trussel*, the trial court entered judgment four years after a jury verdict. 170 N.C. App. 33, 36, 612 S.E.2d 195, 197 (2005). In *Van Trussel*, the court *sua sponte* entered a PJC on the minor charges while the defendant appealed his convictions on the more serious charges where sentences had been entered. *Id* at 35, 612 S.E.2d at 197. Here, Mr. McDonald's PJC had no definite term, and no intervening appeals justifying the delay here.

The majority relies heavily on an 80-year-old case, *State v. Pelley*, as precedent for a case where this Court approved a delay in judgment that approximated the seven-year delay in this case. 221 N.C. 487, 495, 20 S.E.2d 850, 855 (1942). But the facts of *Pelley* are distinguishable, and the simple reliance on the length of the delay in *Pelley*, divorced from the extenuating circumstances in that case, creates a rule that extends the permissible bounds of delayed entry of judgment without any discernible limitations. In *Pelley*, the original PJC had a fixed term of five years; the defendant was given a five-year suspended sentence with specified conditions on the first count and a five-year PJC on the second count. *Id.* at 491, 20 S.E.2d 853.

This Court based its approval of the seven-year delay in *Pelley* because the defendant violated the terms of the suspended sentence within the five-year period and then *absconded from the jurisdiction*. *Id.* at 492, 20 S.E.2d 854-55. Law enforcement found and arrested the defendant within the five-year period, but he was arrested outside of North Carolina. *Id.* at 494, 20 S.E.2d 854-55. The defendant

13

resisted his return to North Carolina, resulting in a two-year *habeas* battle before he reentered the state. *Id.* at 494-95, 20 S.E.2d 855. Once the defendant returned to North Carolina, the court entered judgment and this Court affirmed that delay in entry of judgment as reasonable based upon the facts in that case. *Id.* at 495, 20 S.E.2d 855. Stated differently, two years of the asserted seven-year precedent in *Pelley* was because that defendant left the state, violating specific conditions of his suspended sentence, and then refused to return. That is hardly comparable to the case here. Taking, as I do, the facts of *Pelley* being quite unusual in allowing the justification of a seven-year delay, no other North Carolina case approves a delay even remotely reaching the length here. Therefore, I would hold that the length of delay in this case was unreasonable such that it divested the trial court of jurisdiction to enter the judgment.

I find persuasive cases from other jurisdictions that take into consideration the relationship between the length of the delay and the maximum penalty for the crime. These courts have considered the length of the possible sentence or probation period as a gauge of the reasonableness of the delay in entry of judgment after a PJC. *See, e.g., People v Kennedy*, 25 N.W. 318, 320 (Mich. 1885) (holding that the judgment could not be delayed longer than 90 days when the longest sentence that could be imposed was 90 days); *Jeffries v. Mun. Court of City of Tulsa,* 536 P.2d 1313, 1317 (Okla. Crim. App. 1975) *(*superseded by statute on other grounds) (holding that delaying entry of judgment beyond the maximum period which may have been

accessed as a penalty for the violation divested the court of jurisdiction); *Commonwealth ex rel. Wilhelm v Morgan,* 123 A 337, 400 (Pa. Super. 1924) (holding that sentence can only be suspended for a reasonable time not to extend beyond the maximum term of imprisonment). While our courts have not employed such a comparison, I do not read our precedent to preclude it either. And here, the maximum allowable sentence for this class A1 misdemeanor is 150 days. Entry of judgment was delayed for 7 years – over 17 times the maximum sentence for this misdemeanor.

### 4. *The Delay Prejudiced the Defendant*

Finally, in this case, the delay of seven years prejudiced Mr. McDonald. In the intervening years between when Mr. McDonald pled guilty and the trial court entered judgment, the State destroyed all its evidence in the case. After the State made a motion for entry of judgment in 2020, Mr. McDonald made a discovery motion, and the State notified him that all evidence surrounding the 2011 incident had been destroyed.

Without discovery from the State, Mr. McDonald was unable to present mitigating factors, if any, that may have impacted the length of his sentence entered in 2022. For example, Mr. McDonald did not have access to the accident reconstruction report and a speed reconstruction compiled by an expert that were the basis of the State's proffer of guilt during the plea hearing. Additionally, Mr. McDonald did not have information on the speed the other driver was traveling, medical or vision issues of the victim that would have impacted his ability to respond

15

to a car that was one or two feet into his lane, or the existence of any impairing substances in the victim's system at the time of the incident. Significantly, during the plea agreement in 2014, the trial court told Mr. McDonald that he would "have the right during a sentencing hearing to prove to the Court the existence of any mitigating factors that may apply to your case[.]" This Court has held that a defendant was prejudiced when the State failed to turn over evidence that is material to guilt *or punishment*. *State v. Williams*, 190 N.C. App. 301, 311, 660 S.E.2d 189, 195 (2008), *aff'd*, 362 N.C. 628, 669 S.E.2d 290 (2008) (emphasis added).

Ultimately, the trial court in 2022 sentenced Mr. McDonald to the maximum sentence, 150 days, suspended to 12 months of probation and loss of license. I would find that Defendant was prejudiced by the State's failure to turn over evidence that he might have used to argue for a sentence less than the maximum.

## II.    Conclusion

For the reasons explained above, I would hold that the State did not meet the burden of proving the trial court had jurisdiction to enter the order, the delay in entry of judgment in this case was unreasonable, and the trial court was divested of jurisdiction to enter judgment. I respectfully dissent.